1999 SD 137

**Errol W. BRUMMER, Plaintiff and Appellee,**

v.

**Dennis STOKEBRAND, Defendant and Appellant.**

**No. 20873.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1999.

Decided Oct. 27, 1999.

No Appearance for Plaintiff and Appellee.

John J. Simpson, Winner, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] Dennis Stokebrand appeals from an order in a claim and delivery proceeding and from a contempt order. We affirm the claim and delivery order, but we reverse the contempt order and remand for further proceedings.

### FACTS

[¶ 2.] In November 1997 Errol Brummer and Stokebrand entered into an oral agreement for the lease of a home owned by Stokebrand's wife. Stokebrand claims that several months later Brummer became delinquent in rental and utility payments. Around the first of April 1998 either Stokebrand or his adult stepsons evicted Brummer from the residence by barring access to it. However, Brummer was allowed to return to the home to collect some personal possessions and to take a shower. Brummer claims he did not remove all his personal belongings during his last visit to the house, and that Stokebrand retained some of his property in order to collect the allegedly delinquent rent payments. In contrast, Stokebrand claims he does not have any of Brummer's property.

[¶ 3.] On September 8, 1998, Brummer commenced a claim and delivery proceeding seeking to require Stokebrand to show cause why Brummer should not be entitled to immediate delivery of his property. Brummer also brought an action against Stokebrand for specific delivery of unreturned personal property, as well as seeking damages for conversion of property which Stokebrand did not return. The trial court ordered a show cause hearing be held on the claim and delivery proceeding on October 2, 1998. On that date, after hearing testimony by both sides, the trial judge ordered Stokebrand to either return property rightfully owned by Brummer no later than October 3, 1998, or else be held in contempt. On October 6, 1998, the parties reconvened before the trial judge. Brummer was represented by counsel; Stokebrand was not. At that time the judge determined that Stokebrand was in contempt of the order because he failed to return all of Brummer's property.[1] The court immediately remanded Stokebrand to the custody of the Todd County Sheriff, who placed him in jail. Stokebrand was released on October 7, 1998, when his wife posted a cash bond of $4,540.

[¶ 4.] On appeal, Stokebrand raises the following issues:

1. Whether the claim and delivery order compelling Stokebrand to return personal property to Brummer was erroneously entered.

2. Whether the contempt order was erroneously entered.

## STANDARD OF REVIEW

[¶ 5.] Our review of a trial court's findings of fact and conclusions of law are well settled. "We have held that a trial court's findings of fact will not be disturbed unless they are clearly erroneous." *Fanning v. Iversen,* 535 N.W.2d 770, 773 (S.D.1995) (quoting *Knudsen v. Jensen,*

521 N.W.2d 415, 418 (S.D.1994)). Clear error is shown only when, after review of all the evidence, "we are left with a definite and firm conviction that a mistake has been made." *Id.* (citing *Cordell v. Codington County,* 526 N.W.2d 115, 116 (S.D. 1994)). A trial court's findings in a contempt action are also reviewed under the clearly erroneous standard. *Taecker v. Taecker,* 527 N.W.2d 295, 298 (S.D.1995). Conclusions of law are reviewed de novo. *Fanning,* 535 N.W.2d at 773. Statutes are interpreted "under a de novo standard of review without deference to the decision of the trial court." *In re Estate of Jetter,* 1997 SD 125, ¶ 10, 570 N.W.2d 26, 28 (citations omitted).

[¶ 6.] Before reaching the merits of the case, we must first address a procedural issue. Brummer, who is the appellee, did not file a brief because of financial considerations. SDCL 15–26A–80 provides:

> If an appellant fails to file his brief within the time provided by 15–26A–75 or within the time as extended, an appellee may move for dismissal of the appeal. *If an appellee fails to timely file his brief, he will not be heard at oral argument except by permission of the Court.* The clerk may not accept for filing any brief not timely submitted for filing. (Emphasis added.)

This Court stated in *Hawkins v. Peterson,* 474 N.W.2d 90 (S.D.1991):

> While failure of an appellant to file a brief may be fatal ... failure of the appellee to file a brief does not automatically translate to victory for the appellant. Appellant still has the burden of showing that the findings of fact are clearly erroneous or that the conclusions of law are incorrect.... The appeal will be decided on the merits.

*Id.* at 92 (internal citation and footnote omitted). In the present case, as was the

---

1. Stokebrand returned a portion of Brummer's property which had a value of $1,567, leaving a balance of $4,540.

situation in *Hawkins*, the reason for not filing an appellee brief is lack of funds. As in *Hawkins*, this case will be decided on the merits.

## DECISION

### [¶ 7.] 1. The order compelling Stokebrand to return personal property to Brummer was proper.

[¶ 8.] The claim and delivery hearing held on October 2, 1998, was to determine who had the right to possession of the property. Stokebrand does not dispute that the property belongs to Brummer. Rather, his defense centers around the fact that it is impossible for him to return Brummer's property because he does not have it in his possession. Notwithstanding this defense, the trial judge found that Brummer was entitled to possession and ordered Stokebrand to return it. The order entered pursuant to the claim and delivery hearing states in pertinent part:

It is therefore, ORDERED, ADJUDGED AND DECREED, that Defendant shall deliver all the items of personal property described on Exhibit "A" to Plaintiff at the Todd County Sheriff's office at 5:00 p.m. on October 3, 1998. If Defendant fails to do so, the parties shall appear before the Court at 4:00 p.m. on October 5, 1998, at which time Defendant shall show cause to the Court why he should not be held in contempt.

[¶ 9.] Stokebrand claims that the part of the order purporting to hold him in contempt for failure to comply was entered *sua sponte* without application by the plaintiff and, as such, is invalid. Based upon a reading of our applicable statutes, we disagree.

[¶ 10.] Generally, civil contempt proceedings can be initiated only by the aggrieved party or by one who has an interest in the right to be protected. 17

AmJur2d *Contempt* § 170 (1990). However, SDCL 15–6–67(d) provides:

When it is admitted by the pleading or examination of a party that he has in his possession or control any money or other thing capable of delivery which, being the subject of the litigation, ... belongs or is due to another party, the court may order the same to be deposited in court or delivered to such other party, with or without security, subject to further direction. If such order is disobeyed, the court may punish the disobedience as a contempt[.]

[¶ 11.] The trial judge found that Stokebrand admitted to the county sheriff that he was detaining Brummer's personal property in order to collect money he felt was owed to him under the lease agreement. Such admission satisfies the requirements of this statute. Thus, it appears the judge had the proper authority under SDCL 15–6–67(d) to order a contempt hearing when Stokebrand failed to return the property to Brummer by the following day.

### [¶ 12.] 2. The contempt order against Stokebrand was improper.

[¶ 13.] The parties met again on October 6, 1998, pursuant to the oral order handed down on October 2, 1998.[2] The purpose of the hearing was to show cause why Stokebrand should not be held in contempt for failure to return Brummer's property. Brummer and his attorney were present. Upon convening the hearing, the trial judge inquired about the absence of Stokebrand's attorney. Stokebrand informed the court his attorney was no longer representing him. At the same time, his former attorney briefly entered the courtroom to confirm to the court that he was no longer representing Stokebrand. The court noted for the record that Stokebrand was unrepresented.

[¶ 14.] The trial judge then proceeded to ascertain the status of Brummer's proper-

---

**2.** The October 2nd order directed the parties to reconvene on October 5th, but because the judge was ill, the matter was postponed until the following day.

ty. It appears from the hearing transcript that the witnesses were not placed under oath. After determining that Stokebrand had returned only a portion of Brummer's property, the judge held him in contempt for failing to return the remaining articles. He was immediately remanded to the custody of the county sheriff and placed in jail, to be purged of contempt only by returning the remaining articles or posting a cash bond equal to the value of the unreturned articles, which totalled $4,540. Stokebrand's wife posted a cash bond the next day, and he was released.

[¶ 15.] This Court in *Thomerson v. Thomerson* set forth a detailed review of civil contempt in this state:

> Courts of general jurisdiction have inherent power to punish contempt by fine or imprisonment, *City of Mount Vernon v. Althen,* 72 S.D. 454, 458, 36 N.W.2d 410, 412 (1949), *Fritz v. Fritz,* 45 S.D. 392, 394, 187 N.W. 719, 720 (1922), or both. *Nauman v. Nauman,* 320 N.W.2d 519, 521 (S.D.1982); *Simmons v. Simmons,* 66 S.D. 76, 79, 278 N.W. 537, 538 (1938). Contempt of court is classified as either criminal or civil. See SDCL 15–20–19 and ch. 23A–38.... Constructive or civil contempts arise not from matters transpiring in court but rather from a person's failure to comply with orders and decrees issued by the court in a civil action for the benefit of an opposing party. *American–News Co.,* 62 S.D. at 459, 253 N.W. at 494. It is not always easy to classify a particular act as belonging either to criminal or civil contempt. *Id.* It may partake of the characteristics of both. *Id.* However, the distinction in punishment is clear. In criminal contempt, the order itself is in the nature of punishment. *Id.* at 460, 253 N.W. at 493. In civil contempt, the punishment is coercive, that is, it compels the person to act in accordance with the court's order. *Id.; State v. Knight,* 3 S.D. 509, 514, 54 N.W. 412, 413 (1893).
> ... A prosecution for civil contempt, as distinguished from criminal contempt,

involves features of a formal trial including the making of a charge based on an affidavit and the giving of notice to the contemner. *Fienup v. Rentto,* 74 S.D. 329, 332, 52 N.W.2d 486, 488 (1952). A civil contempt proceeding may be brought by an order to show cause, *Simmons,* 66 S.D. at 79, 278 N.W. at 538, and may properly be entitled within a civil action; it need not be a separate proceeding. *Freeman v. City of Huron,* 8 S.D. 435, 437, 66 N.W. 928, 928–29 (1896). The affidavit seeking an adjudication of civil contempt is treated as the complaint or information to which the accused, in effect, is requested to plead guilty or not guilty. *See e.g., Simmons,* 66 S.D. at 80, 278 N.W. at 538–39. If he denies the allegations, the burden of proving the allegations necessary to sustain the contempt as charged fall upon the person bringing the proceedings. *Freeman,* 8 S.D. at 437, 66 N.W. at 929.

*Thomerson v. Thomerson,* 387 N.W.2d 509, 512 (S.D.1986) (footnote omitted).

[¶ 16.] Stokebrand's appeal of the contempt order focuses on the fact that the trial judge entered the order based upon unsworn testimony. He also raises other claims of violation of his due process rights that we need not address because of our disposition of the primary claim. We agree with Stokebrand that the contempt order should be reversed because it was erroneously based upon unsworn testimony.

[¶ 17.] The function of an oath is to bind the conscience of the speaker at a time when what he says will deeply affect the rights of an individual, 58 AmJur2d *Oath and Affirmation,* §§ 1, 6 (1989), and to permit prosecution if perjured testimony is given. *Id.* at § 7. *See also Tice v. Mandel,* 76 N.W.2d 124, 137 (N.D.1956); *Heier v. State,* 727 P.2d 707, 708 (Wyo. 1986). SDCL 19–14–3 provides: "Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form

calculated to awaken his conscience and impress his mind with his duty to do so."

[¶ 18.] Our Court has not had the opportunity to interpret this statute. Other state courts interpreting similar statutes have simply held that failure to obtain sworn testimony is reversible error. *See Lewis v. State,* 653 So.2d 1107 (Fla.App. 3 Dist.1995) (trial court erred in relying on unsworn testimony of witness); *Belcher v. State,* 173 Ga.App. 509, 326 S.E.2d 857 (Ga.App.1985) (unsworn statements are not treated as amounting to evidence, except in specified cases of necessity); and *Hinshaw v. Dyer,* 166 Colo. 394, 443 P.2d 992 (1968) (colloquy between counsel and trial court cannot take the place of sworn testimony). Still other courts have held that failure to administer an oath is reversible error only when the appellant did not know of the error or did not know to object to the error. *See Larsen v. State,* 686 P.2d 583 (Wyo.1984) (right to have sworn testimony waived where appellant's counsel had opportunity to object to the witness's unsworn testimony but did not do so); *Thomas v. Dad's Root Beer & Canada Dry Bottling Co. of Portland, Or.,* 225 Or. 166, 357 P.2d 418 (1960) (if appellant knows of failure to swear in at the time, the defect must be taken advantage of immediately or the failure to do so is acquiescence and the objection is waived); and *Brenton State Bank v. Heckmann,* 233 Iowa 682, 7 N.W.2d 813 (1943) (since appellant's attorneys made no objection to failure to swear in witnesses, right to object was waived).

[¶ 19.] Irrespective of whether this Court would adopt the line of cases which hold unsworn testimony is inadmissible, or whether we ultimately decide to impose a "need to object" element concerning unsworn testimony, it is obvious that the unsworn testimony at Stokebrand's contempt hearing constituted reversible error. Neither party objected to the unsworn testimony. Even Brummer's counsel did not object. However, it is highly unlikely that a lay person without counsel could have known that in order to preserve the right to appeal, he should have objected to the unsworn testimony. Additionally, the grave result of the unsworn testimony—Stokebrand's incarceration—adds import to the trial judge's erroneous reliance on it.

[¶ 20.] It is clear that the unsworn testimony must be disregarded as evidence. Further, such testimony comprised the only evidence of Stokebrand's alleged contempt. Without such evidence, the trial judge's contempt finding cannot be supported. It cannot be said that the unsworn testimony was harmless. Thus, the contempt order was improperly issued and must be reversed.

[¶ 21.] Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

[¶ 22.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.