2001 SD 75

Laurie Jean Bryant HARKSEN, As Administrator of the Estate of John C. Harksen, a/k/a J.C. Harksen, Deceased, Plaintiff and Appellee,

v.

Gene PESKA, Defendant and Appellant,

and

Ruth Martens Lamont, Steven M. Johnson, Dave R. Johnson, Robert A. Warder and Joann Warder, Robert A. Warder, Trustee, and Robert A. Warder, Individually, Defendants and Appellees,

and

Everett P. Howe, Warren Carter Johnson and E. Ashworth, Gordon O. Gavin and Donna J. Gavin, Scott L. McCaskell and Sharla P. McCaskell, Judith Goudy and Betty Peska, Defendants.

No. 21602.

Supreme Court of South Dakota.

Considered on Briefs on Feb. 13, 2001.

Decided June 13, 2001.

———

Robert Warder, Rapid City, SD, Attorney for appellees.

Kenneth R. Dewell of Viken, Viken, Pechota, Leach and Dewell, Rapid City, SD, Attorneys for defendant and appellant Peska.

ROEHR, Circuit Judge

[¶ 1.] The trial court found Gene Peska (Peska) in civil contempt of court and entered a specific permanent injunction. Peska appeals. We affirm, in part, and reverse and remand, in part.

## FACTS

[¶ 2.] This matter has been before this Court on a previous occasion. *Harksen v. Peska*, 1998 SD 70, 581 N.W.2d 170. Additional facts are set forth in that opinion.

[¶ 3.] Peska purchased seven and one-half acres of land in a tract in the Black Hills. The entire tract was subject to restrictive covenants, which will expire in 2023. These covenants prohibited Peska from building a residence on his land. Nevertheless, Peska built a cabin on his land; he also constructed a primitive dirt road on the land to provide access to the cabin. John Harksen (Harksen), a neighboring landowner, began an action against Peska. The trial court issued a mandatory injunction requiring Peska to remove his cabin. On appeal, this Court found removal of the cabin to be too harsh a penalty, reversed and remanded, and directed the trial court to modify the injunctive relief.

[¶ 4.] After our remand, the trial court held a hearing on modification of the injunctive relief. After the hearing, the trial court proposed its own findings of fact, conclusions of law, and modified permanent injunction. The proposed modified permanent injunction ordered Peska to comply with the restrictive covenants and ordered:

that Gene Peska shall not make any additions or changes to the exterior of the cabin or to the rest of the property and Gene Peska is hereby enjoined from making any additions or changes to the exterior of the cabin or to the rest of the property for the remaining period of the covenants.

Peska objected to the trial court's proposed findings, conclusions, and modified injunction. He also proposed three different injunctions as alternatives to the trial court's proposal. Each of Peska's proposed injunctions would have enjoined him from making any additions or changes to the exterior of the cabin and to the rest of the property, "save routine and general maintenance and repairs as reasonably necessary." Two of his proposals would also have allowed Peska "to complete his road providing ingress and egress from the residence by application of gravel or similar road-building material." The trial court entered its own findings, conclusions, and modified permanent injunction, as originally proposed, and provided notice to Peska's attorney. The trial court also refused Peska's objections and each of Peska's proposed injunctions.

[¶ 5.] In the summer of 1999, after entry of the modified permanent injunction, Peska improved the road on his land. He graded the roadbed, cut ditches adjacent to the road, and spread approximately eighty tons of gravel on the road, forming a two-inch gravel base.

[¶ 6.] Robert A. Warder (Warder), one of the defendants and a neighboring land-

owner, signed and filed an affidavit seeking an adjudication of civil contempt. The trial court issued an order to show cause. At the show cause hearing, the trial court found Peska to be in civil contempt and issued a specific permanent injunction enjoining and restraining Peska from any and all use or occupancy of the property for the remaining term of the restrictive covenants.

[¶ 7.] Peska then moved for an order allowing him to perform eleven itemized actions on the property, each of which Peska characterized as repairs and maintenance. The trial court denied the motion without a formal hearing.

## ISSUES

[¶ 8.] Peska raises the following issues: Was Peska in civil contempt of court for his conduct relating to the modified permanent injunction?

Did the trial court have the authority to issue the specific permanent injunction as punishment for Peska's civil contempt of court?

Did the trial court abuse its discretion in denying Peska's motion to allow the repairs and maintenance?

## STANDARD OF REVIEW

[¶ 9.] As to the first issue, we will not set aside a trial court's findings of fact unless they are clearly erroneous. *Mid–Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 4, 562 N.W.2d 888; *Shedd v. Lamb*, 1996 SD 117, ¶ 17, 553 N.W.2d 241. We review conclusions of law under a *de novo* standard, with no deference to the trial court's conclusions of law. *Mid–Century*, 1997 SD 50, ¶ 4, 562 N.W.2d 888; *Shedd*, 1996 SD 117, ¶ 17, 553 N.W.2d 241.

[¶ 10.] As to the second and third issues, the appropriate remedy or punishment for contempt of court, and any

reconsideration thereof, lies within the sound discretion of the trial court. " 'Abuse of discretion' is discretion not justified by, and clearly against, reason and evidence. The test is whether a judicial mind, in view of the law and circumstances, could reasonably have reached the conclusion." *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900, 906 (S.D.1994).

## DECISION

### ISSUE ONE

[¶ 11.] **Was Peska in civil contempt of court for his conduct relating to the modified permanent injunction?**

[¶ 12.] The required elements for a finding of civil contempt "are (1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Thomerson v. Thomerson*, 387 N.W.2d 509, 512–513 (S.D.1986).

[¶ 13.] Peska acknowledges the existence of the modified permanent injunction and his ability to comply with it. Peska argues that the trial court's findings with regard to knowledge and disobedience of the injunction are clearly erroneous.

[¶ 14.] The second requirement of a contempt finding is that Peska have knowledge of the existence of the modified permanent injunction. The trial court found that Peska was duly served through counsel with the modified permanent injunction and knew its contents. Peska admits personal knowledge of the modified permanent injunction. However, he denies any knowledge that his objections to the trial court's proposed findings were overruled. Thus, he argues, he did not know that his work on the road was a violation of the modified permanent injunction.

[¶ 15.] Peska's admission of personal knowledge of the injunction satisfies the requirements of the second element. It is not necessary that he also have knowledge that his objections were overruled. Even if it were necessary, such knowledge is implicit in the entry of the modified permanent injunction. Peska knew of the trial court's proposals, and he knew that after he made his objections, the trial court's proposed injunction was entered without change, exactly as it had been proposed. Obviously, the trial court had overruled Peska's objections.

[¶ 16.] The fourth requirement of a contempt finding is Peska's willful or contumacious disobedience of the modified permanent injunction. The trial court found that the terms of the injunction were clear and unambiguous, that the blading and graveling of the roadway was a violation of the injunction, and, that Peska through counsel objected to the trial court's proposed findings, conclusions, and injunction because he knew it would prevent him from blading and graveling the roadway.

[¶ 17.] Peska asserts that the modified permanent injunction is ambiguous. We have previously stated:

> To form the basis for a subsequent finding of contempt, an order must state the details of compliance in such clear, specific, and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon him.

*Karras v. Gannon*, 345 N.W.2d 854, 859 (S.D.1984).

[¶ 18.] Peska does not explain how he believes the injunction is ambiguous. We have reviewed the terms of the modified permanent injunction and find them to be clear and unambiguous. Moreover, Peska's objections and his own proposed injunctions show that he knew exactly what duties or obligations were being imposed on him.

## ISSUE TWO

[¶ 19.] **Did the trial court have the authority to issue the specific permanent injunction as punishment for Peska's civil contempt of court?**

[¶ 20.] As punishment for Peska's contempt, the trial court entered a specific permanent injunction prohibiting Peska from using or occupying the property for the remaining term of the restrictive covenants. Peska argues that the trial court abused its discretion by ordering unauthorized, punitive sanctions in a civil contempt proceeding.

[¶ 21.] We detailed the difference between civil contempt and criminal contempt in *Brummer v. Stokebrand*, 1999 SD 137, 601 N.W.2d 619. The trial court and the parties to this action properly characterize this case as one of civil contempt. Warder, a neighboring landowner, began the contempt proceedings with an affidavit seeking an order requiring Peska to show cause why he should not be found in contempt and why the trial court should not enter an order enforcing the restrictive covenants and the modified permanent injunction.

[¶ 22.] The purpose of civil contempt is to compel compliance with the court's order. Its sanction is coercive. *State, Fall River County v. Dryden*, 409 N.W.2d 648, 650 (S.D.1987); *Karras v. Gannon*, 345 N.W.2d at 856. The sanction becomes coercive when the contemnor is allowed to purge himself of contempt. Without it, the sanction is merely punitive. Other jurisdictions have held that the ability to purge is a requirement of a civil contempt sanction. *Parisi v. Broward County*, 769 So.2d 359 (Fl.2000); *In re M.B.*, 101 Wash.App. 425, 3 P.3d 780,

(2000); *Meyer v. Meyer*, 414 A.2d 236, 239 (Me 1980); *State v. Roll*, 267 Md. 714, 298 A.2d 867 (1973).

■ [¶ 23.] The trial court's specific permanent injunction is punitive, not coercive. It further modifies or supplants the modified permanent injunction, rather than seeking to enforce it. It enjoins Peska from any and all use of the property, rather then coercing removal of the road and future compliance with the modified permanent injunction. It denies Peska the right to purge himself and come into compliance with the modified permanent injunction. It exceeds the trial court's authority in a civil contempt proceeding. We reverse and remand for proceedings to determine what Peska can do to purge the contempt and the timeframe in which he can do so.

### ISSUE THREE

[¶ 24.] **Did the trial court abuse its discretion in denying Peska's motion to allow the repairs and maintenance?**

[¶ 25.] We do not reach this issue.

[¶ 26.] We affirm as to Issue One and reverse and remand as to Issue Two.

[¶ 27.] MILLER, Chief Justice, and AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 28.] SABERS, Justice, concurs specially.

[¶ 29.] ROEHR, Circuit Judge, for KONENKAMP, Justice, disqualified.

SABERS, Justice (concurring specially).

[¶ 30.] I concur with the majority opinion's reversal because the permanent punitive injunction was too harsh. However, I would strongly urge this Court, especially in light of the prior history of this appeal, to provide guidance to the trial court concerning acceptable civil sanctions. Other-

wise, this case may be back for a third time.

[¶ 31.] On remand, I would recommend that reasonable repairs and maintenance be allowed on the premises. To hold otherwise would be to condone waste on this structure. In fact, mandating waste on this structure until 2023 is punitive and contrary to the analysis of the majority opinion. At any rate, the majority opinion's decision not to address reasonable repairs and maintenance should not be viewed as approval of the trial court's decision in that respect, but just the opposite.