2003 SD 36

**Mark Alan KELLER, Plaintiff and Appellee,**

v.

**Jane Ann KELLER, Defendant and Appellant.**

**Nos. 22484, 22485.**

Supreme Court of South Dakota.

Considered on Briefs March 24, 2003.

Decided April 9, 2003.

Reed Rasmussen of Siegel, Barnett & Schutz, Aberdeen, South Dakota, Attorneys for plaintiff and appellee.

Thomas M. Tobin of Tonner, Tobin & King, Aberdeen, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Jane Keller (wife) appeals the trial court's finding of contempt and a money judgment against her for failing to comply with court orders concerning a qualified domestic relations order (QDRO). By notice of review, Mark Keller (husband) asserts the trial court erred in not awarding him attorney fees.

## FACTS AND PROCEDURE

[¶ 2.] On September 13, 2000, husband and wife entered into a stipulation and agreement relating to the dissolution of their marriage, which provided in relevant part:

[Wife] shall within the next 30 days take whatever steps are necessary to effectuate the transfer of $23,000.00 from her SBC Savings Plan retirement fund into a separate account for the [husband] in accordance with a Qualified Domestic Relations Order to be entered by the Court.

Wife did not make the necessary arrangements within 30 days after the signing of the agreement and the transfer was not effectuated within that period. On October 3, 2000, husband's attorney inquired why the transfer had not yet been completed and requested information concerning the transfer.

[¶ 3.] On that same day, the judgment and decree of divorce was entered by the trial court. The decree specified that:

[Wife] shall take whatever steps are necessary within 30 days of the date of said Stipulation and Agreement to cooperate with her retirement plan to effectuate the transfer of $23,000.00 into a separate account for the [husband] and in accordance with a QDRO which the Court will be entering.

The transfer was not timely completed and husband filed a motion seeking an order to show cause. Following a hearing on November 20, 2000, the trial court entered an order providing:

[Wife] shall on or before December 1, 2000, submit a QDRO to the administrator of her retirement plan to effectuate the transfer of $23,000.00 from [wife's] retirement fund into a separate account for the [husband] pursuant to the Stipulation and Agreement previously entered into by the parties and which was incorporated into the Judgment and Decree of Divorce entered on the 3rd day of October, 2000, and that such QDRO shall require the [wife's] retirement plan to give to [husband] the benefit of any increases on the $23,000.00 in that fund accruing on or after October 13, 2000.

Wife failed to provide the administrator of her retirement plan with a QDRO by December 1, 2000. On December 29, 2000, the QDRO was presented to and signed by the trial court. It was then incorrectly sent to SBC Savings by wife's broker. At the most recent contempt hearing, wife testified that she knew when she signed the agreement that the retirement fund was no longer with SBC Savings but was actually held by MFS Investment Management. Because she did not have the stipulation corrected, her own representative sent it to the wrong place. Eventually, the QDRO was correctly forwarded to MFS for processing. Yet, wife still did not fulfill the remaining requirements for completing the QDRO transfer.

[¶ 4.] The trial court held another hearing on January 24, 2001, to address the delay in getting the retirement funds transferred. Wife was ordered to "sign and mail to the managing party of the retirement funds the transfer of the authorization with the signature guaranteed by 5:00 pm Wednesday, January 31, 2001." Despite this order, wife did not sign the necessary authorizations until May 25, 2001. However, even after this occurred the transfer was not completed. As a result, on September 19, 2001, husband filed a motion to hold wife in contempt for repeatedly failing to take the necessary steps to transfer the funds.

[¶ 5.] Following notice of that motion, wife took additional steps towards completion of the transfer but still did not complete all the necessary requirements. On December 11, 2001, a contempt hearing was held and wife was ordered to have the

funds transferred by December 21, 2001. In addition, the trial court ordered:

> That [wife] shall supply to the Court, no later than December 31, 2001, a copy of all documentation evidencing the efforts [wife] has taken to transfer the funds in question. This documentation will be considered by the Court in determining whether husband is entitled to the payment of additional funds due to the delay in transferring the funds.

Wife did not provide any documentation. Finally, on February 20, 2002, the funds were transferred to husband. However, due to market conditions following the tragedy of September 11, 2001, the value of the retirement funds received by husband was significantly reduced to a total of $9,249.57.

[¶ 6.] Another contempt motion was heard April 30, 2002. At that hearing, wife asserted that she was diligent at all times, attempted to do whatever was necessary to comply with the orders and acted in good faith when seeking to transfer the funds. She attributed part of the delay to errant advice she received from the financial entity and her broker. The trial court determined that wife was in contempt of court for her failure to transfer the funds in a timely manner. As a result, wife was ordered to pay husband the difference between the $23,000 she was supposed to transfer and the amount he actually received, minus 10%. The 10% penalty would be incurred because husband intended to withdraw the money. Therefore, a judgment was entered against wife in the amount of $11,451.00. Wife appeals contending the contempt award was not justified on these facts.

## ANALYSIS

### ISSUE ONE

[¶ 7.] **Whether the trial court abused its discretion in finding wife in contempt.**

[¶ 8.] "We will not set aside a trial court's findings of fact unless they are clearly erroneous." *Harksen v. Peska*, 2001 SD 75, ¶ 9, 630 N.W.2d 98, 101. The appropriate remedy or punishment for contempt of court lies within the sound discretion of the trial court. *Id.* ¶ 10. "Abuse of discretion is discretion not justified by, and clearly against, reason and evidence. The test is whether a judicial mind, in view of the law and circumstances, could reasonably have reached the conclusion." *Id.*

[¶ 9.] "The required elements for a finding of civil contempt are (1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Id.* ¶ 12. Wife concedes that requirements 1 and 2 are met on these facts. However, concerning requirements 3 and 4 wife maintains that the above facts, as found by the trial court, do not justify a finding of contempt. She asserts that these facts do not demonstrate a willful disregard for the court's orders or that she acted in bad faith. She also maintains that the actions of third parties contributed to her inability to complete the transfer on time and that she cannot be held responsible for those actions.

[¶ 10.] "To form the basis for a subsequent finding of contempt, an order must state the details of compliance in such clear, specific and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon [her]." *Id.* ¶ 17. It is undisputed that wife knew what was required of her. Given the initial order of the court, and the subsequent orders directed at compelling wife to comply with the previous order, it is clear that the trial

court was dealing with a party that it viewed as unresponsive. The record demonstrates a clear pattern of disregard for the court's orders concerning the QDRO. *See Richardson v. Richardson*, 774 A.2d 1267, 1271 (Pa.Super.2001) (holding husband in contempt for failing to sign a QDRO). The trial court did not abuse its discretion in determining this was contemptuous behavior.

[¶ 11.] As it relates to wife's argument that the actions of third parties led to her inability to comply, the trial court specifically entered an order requesting her to delineate her actions as they relate to transferring the funds for the court's consideration. She failed to comply. Based on wife's testimony that her broker and the financial company provided faulty advice, which she asserted excused her noncompliance, the trial court determined that the acts and omission of those agents could be attributed to her. The trial court also indicated that if the delay was caused by the negligence of others she should pursue her available remedies against those other parties.

[¶ 12.] "It is universally recognized that a master is liable for injuries to the person or property of third persons caused by the negligence of employees when such negligence occurs in the scope of his employment." *Deuchar v. Foland Ranch, Inc.*, 410 N.W.2d 177, 180 (S.D. 1987). *See also Thornburg v. Lynch*, 277 B.R. 719, 726 (Bkrtcy.E.D.Tex. 2002) (reviewing whether actions by party or her agents constituted contempt). Over the course of nearly eighteen months wife failed to comply with the orders of the court. The duration of this ordeal coupled with the specific warnings from the trial court were more than sufficient for her to comply. The findings reflect that her own conduct justified the finding of contempt and her attempt to cast blame elsewhere is no excuse as a matter of law. Therefore, the trial court did not err in determining she was in contempt.

ISSUE TWO

[¶ 13.] **Whether the trial court abused its discretion in awarding husband $11,451 as a remedy.**

[¶ 14.] The original agreement of the parties and the divorce decree required the wife to transfer $23,000 to husband. By the time wife completed the transfer the value had dropped significantly. This Court has stated:

> The purpose of civil contempt is to compel compliance with the court's order. Its sanction is coercive. The sanction becomes coercive when the contemnor is allowed to purge [herself] of contempt. Without it, the sanction is merely punitive. Other jurisdictions have held that the ability to purge is a requirement of a civil contempt sanction.

*Harksen*, 2001 SD 75, ¶ 22, 630 N.W.2d at 102.

[¶ 15.] In order to purge the contempt, the trial court returned the husband to the position he would have been had the transfer been completed as contemplated by the agreement of the parties. The trial court specifically found that "although the value of the retirement fund had decreased somewhat before September 11, 2001, the events of that day caused a significant drop in the fund's value." It is not insignificant that September 11, 2001, was almost exactly one year after the initial agreement which required wife to transfer the funds within 30 days. Clearly, the transfer should have been completed by this time.

[¶ 16.] "[T]he appropriate remedy or punishment for contempt of court, and any reconsideration thereof, lies within the sound discretion of the trial court." *Id.* ¶ 10. The trial court did not abuse its

discretion in fashioning this remedy on these facts. Upon full payment, she shall be purged of contempt.

## ISSUE THREE

[¶ 17.] **Whether the trial court erred in refusing to award attorney fees to husband.**

[¶ 18.] The award of attorney fees is authorized by SDCL 15–17–38. Whether an award is warranted, however, is left to the sound discretion of the court. *Driscoll v. Driscoll,* 1997 SD 113, ¶ 10, 568 N.W.2d 771, 773; *Kappenman v. Kappenman,* 522 N.W.2d 199, 202 (S.D.1994). When making this determination, the court must first decide whether the fees are reasonable; then, using our standard factors, it must establish whether an award is necessary. *Billion v. Billion,* 1996 SD 101, ¶ 49, 553 N.W.2d 226, 236–37 (quoting *Fox v. Fox,* 467 N.W.2d 762, 768 (S.D. 1991)). The elements a court should consider are "the property owned by each party, their relative incomes, whether the property of the parties is in fixed or liquid assets, and whether the actions of either party unreasonably increased the time spent on the case." *Kappenman,* 522 N.W.2d at 204 (citing *Kier v. Kier,* 454 N.W.2d 544 (S.D.1990)). There is no showing that the trial court ignored any of these factors or abused its discretion concerning the same.

[¶ 19.] Husband argues that wife's actions, which formed the basis for the finding of contempt, also justified an award of attorney fees because those findings demonstrated that wife unreasonably increased the cost of litigation. In light of the fact a contempt order and money judgment were entered below, the trial court had already considered this factor and rendered the decision that it determined appropriate. The imposition of attorney fees might compound that award. Therefore, there is no showing that the trial court abused its

discretion in denying an award of attorney fees.

## APPELLATE ATTORNEY FEES

[¶ 20.] Husband has filed a motion for appellee attorney fees, costs and tax in the amount of $1,533.22. The motion is accompanied by an itemized statement of costs incurred and legal services rendered in accord with *Malcolm v. Malcolm,* 365 N.W.2d 863, 866 (S.D.1985). Appellate attorney fees may be granted "in actions where such fees may be allowable." SDCL 15–26A–87.3. "In determining if a party is entitled to attorney fees, we consider property owned by each party, their relative income, the liquidity of the assets and whether either party unreasonably increased the time spent on the case." *Pesicka v. Pesicka,* 2000 SD 137, ¶ 20, 618 N.W.2d 725. Considering these factors, we award $1200 for appellate attorney fees to husband.

[¶ 21.] Affirmed.

[¶ 22.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.