#30277-r-SRJ
**2023 S.D. 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LOVE'S TRAVEL STOPS &
COUNTRY STORES, INC., and
ONE SHOT, LLC,                                    Plaintiffs and Appellees,

v.

CITY OF WALL, SOUTH DAKOTA;
CITY COUNCIL FOR WALL, SOUTH
DAKOTA; and PLANNING and ZONING
COMMISSION FOR WALL, SOUTH
DAKOTA,                                           Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE HEIDI L. LINNGREN
Judge

* * * *

RONALD A. PARSONS, JR. of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota

KENT R. HAGG of
Hagg & Hagg, LLP
Rapid City, South Dakota

STEPHANIE TRASK of
City of Wall, South Dakota                        Attorneys for defendants and
                                                  appellants.

* * * *

                                                  ARGUED
                                                  OCTOBER 4, 2023
                                                  OPINION FILED **12/28/23**

* * * *

MICHAEL F. NADOLSKI
JEFFREY D. COLLINS
DANA VAN BEEK PALMER of
Lynn Jackson Shultz & Lebrun, P.C.
Sioux Falls, South Dakota
                                    Attorneys for plaintiffs and
                                    appellees.

#30277

JENSEN, Chief Justice

[¶1.]        Love's Travel Stops & Country Stores, Inc. (Loves) entered into a conditional agreement to purchase property in Wall, South Dakota (City). Loves applied to rezone the property and sought a building permit to develop a new travel stop on the property. After the City Council denied these requests, Loves filed a petition for writ of mandamus, writ of certiorari, and request for declaratory relief with the circuit court. The circuit court granted Loves' petition in part (Mandamus Order) declaring that the City's Zoning Ordinance did not apply to the subject property and granted mandamus relief requiring the City to reconsider Loves' application for a building permit after it "review[ed] and determine[d] whether any member of the City Council is disqualified" from considering Loves' application under SDCL 6-1-17. Neither party appealed the circuit court's ruling.

[¶2.]        The City Council subsequently conducted a conflict-of-interest analysis and determined that no member was disqualified from considering Loves' application under SDCL 6-1-17. Thereafter, the City Council reconsidered and again denied Loves' building permit application. Following the denial, Loves filed a motion for order to show cause requesting the circuit court to find the City in contempt of the court's order and sought issuance of a building permit. The circuit court found the City to be in contempt for willfully and contumaciously disobeying its Mandamus Order and ordered the City to issue Loves a building permit. The City appeals the circuit court's contempt order. We reverse.

## Factual and Procedural Background

[¶3.] Loves is a privately owned corporation that operates 24-hour truck stops across the United States. One Shot, L.L.C. (One Shot), a South Dakota limited liability company, owns real property located in the southwest corner of the City. Loves entered into an agreement to purchase a 13-acre parcel of land (the Property) from One Shot, conditioned upon obtaining City zoning and permitting approvals to develop and construct a new travel stop on the Property. At the time, the Property was located within the City, but had not been platted or designated to one of the four established zoning districts in the City's Zoning Ordinance.[1]

[¶4.] All rezoning and building permit applications within the City must be approved at regular city council meetings. The City Council is comprised of a six-member panel. At the outset of this case, Rick Hustead, Jerry Morgan, Stan Anderson, Mike Anderson, Dar Haerer, and Dan Hauk all served on the City Council.[2] Hustead is the owner of Wall Drug Store, Inc., a popular rest stop and tourist attraction located within the City. Hustead also owns the Wall Auto Livery gas station and convenience store. Mike Anderson is the owner of a Dairy Queen franchise in the City, and Welsh owns a local motel.

[¶5.] On August 22, 2019, Loves presented its plan to build and develop a travel stop to the City Council. These plans garnered significant interest

---

1. The four zoning districts listed within the City's Ordinance include general residential, general commercial, general industrial, and planned unit development.

2. Dar Hearer was replaced by Kelly Welsh while Loves' building permit was being reconsidered.

throughout the community. Hustead was among the council members who expressed their opposition to Loves' plans, citing the potential affect on Wall Drug's business and the safety and economic value of nearby neighborhoods. Several community members also expressed opinions and concerns with Loves' building plans.

[¶6.] On October 16, 2019, Loves sought to rezone the Property from the City's agricultural district to its general commercial district.[3] In response to this request, the City published a notice of hearing on the application for rezoning. The meeting was set to be heard by the City's Planning and Zoning Commission (Commission) on November 5, 2019. The Commission was split with three votes in favor of recommending the application to the City Council and three votes opposed. Hustead and Stan Anderson were among the three votes in opposition to the rezoning application.

[¶7.] Following the Commission hearing, Loves submitted a written request to have the City recuse Stan Anderson and Hustead from considering the application because of their personal conflicts and dual roles in the City government.[4] In response to this request, the City attorney informed Loves that

---

3.    Loves alleges that the City initially represented that the Property was zoned as agricultural land and needed to be rezoned to the general commercial district. Loves claims it did not discover that the Property had not been zoned until after its initial re-zoning application was submitted.

4.    In their petition for writ of certiorari and writ of mandamus, Loves alleged that Hustead and Stan Anderson could not legally sit on the Commission because they were members of the City Council. The circuit court did not address this issue in its Mandamus Order, and it was not directly raised as an issue in the contempt proceedings.

she did not identify any conflicts of interest regarding Loves' application and therefore declined to have any member of the City Council removed.

[¶8.] Loves applied for a building permit on January 20, 2020. The City Council considered both the rezoning request and the building permit application at the next City Council meeting. The City Council voted unanimously to deny Loves' application to rezone the Property. The meeting minutes reflect that the City Council's justification for denying the application was because "[a] decision for the best interest of the health, safety and welfare of this community [was] not possible at [the] time with the lack of a completed study and update to the Master Comprehensive Plan." Shortly thereafter, council members moved and voted unanimously to deny Loves' building permit application because the Property was "not zoned for a commercial business."

[¶9.] On March 24, 2020, Loves filed a petition for writ of mandamus, for writ of certiorari, and for declaratory relief with the circuit court. The petition alleged that the City Ordinance prohibited members of the City Council from sitting on the Commission, that some members of the City Council were biased and had conflicts of interest requiring recusal from considering Loves' application, and that the Commission and City Council failed to properly consider the zoning request and application for a building permit. The petition sought a court declaration that the City's zoning ordinance was not applicable to their building plans, that the City must reconsider Loves' application in accordance with South Dakota law, and further requested the court to require the City to issue Loves a building permit.

[¶10.]	On August 12, 2021, the circuit court granted partial relief to Loves. In it Mandamus Order, the court ordered the City to "review and determine whether any of its members are disqualified from discussing and voting [on Loves' application] as required under SDCL 6-1-17." [5]  The court also ordered the City to reconsider and vote on Loves' building permit application.  The court did not grant certiorari relief and specifically declined Loves' request to require the City to issue a building permit.  In explaining its reasoning, the circuit court stated:

> [W]hile the Court may issue a writ of mandamus requiring the City Council to perform, such as here in considering Love's building permit application, mandamus is inappropriate for dictating how the council must vote, and this is purely a discretionary function.  Therefore, the Court has no authority to require approval of the building permit.

On September 2, 2021, the City Council voted to not appeal the court's decision. Loves also did not appeal the decision.  The City Council then set a hearing date to consider whether any member had a conflict of interest requiring disqualification from considering Loves' application for a building permit.

---

5.	SDCL 6-1-17 provides:

> No county, municipal, or school official may participate in discussing or vote on any issue in which the official has a conflict of interest.  Each official shall decide if any potential conflict of interest requires such official to be disqualified from participating in discussion or voting.  However, no such official may participate in discussing or vote on an issue if the following circumstances apply:
>
> (1)	The official has a direct pecuniary interest in the matter before the governing body; or
>
> (2)	At least two-thirds of the governing body votes that an official has an identifiable conflict of interest that should prohibit such official from voting on a specific matter.

[¶11.] The City Council conducted its conflict of interest analysis pursuant to SDCL 6-1-17 at the September 20, 2021 meeting. The minutes reflect that the City attorney explained to the City Council that it "will need to decide if any council member has a conflict of interest. The analysis is broken down in two parts. The first part is self-analysis, the second is assertion of a councilmember to identify another councilmember's conflict of interest. The assertion would need a motion, a second and requires a 2/3 vote of the council." Special Counsel for the City further explained that a conflict of interest is a "'direct pecuniary gain' and the decision rests exclusively on the city council." Lastly, the Special Counsel restated that "'a direct pecuniary gain' would need to be identified to show conflict of interest." After this discussion, no councilmember self-identified a conflict of interest requiring disqualification and there were no motions made asserting another member's conflict of interest.

[¶12.] After completing the conflict-of-interest analysis, the City Council set a hearing date for October 21 to reconsider and vote on Loves' application. Due to Wall High School's participation in a playoff football game, the City Council meeting was moved to October 18 to ensure adequate opportunity for public input prior to a vote on Loves' application. At the meeting, the City Council welcomed public comment and received a brief presentation by Loves' attorney. During the meeting, Stan Anderson made a motion for "the health, safety, [and] well-being of the residents of the City of Wall" to deny Loves' building permit application. After the motion received a second from Welsh, the City Council voted 4-2 denying Loves'

building permit application. Welsh, Stan Anderson, Hustead, and Mike Anderson voted to deny the building permit.

[¶13.] The City Council's denial prompted Loves to file a motion for order to show cause, which sought to hold the City in civil contempt for failing to comply with the court's prior order. Loves requested the court to order the City to issue a building permit as a remedy for contempt. Following an evidentiary hearing, the circuit court found the City in contempt of the Mandamus Order. The court found that the City willfully and contumaciously disobeyed the order by failing to ensure that no conflict of interest existed before considering Loves' building permit application. In particular, the court found that the City "merely went through the motions of having the conflict-of-interest hearing." The court also determined that the City applied the wrong standard by only considering whether any of the members had a direct pecuniary interest and failed to apply the entirety of SDCL 6-1-17. The court further found that the City "slow walked" the application process and acted "contrary to the powers" provided by "statute and its own ordinances."

[¶14.] The court ordered briefing and set a hearing to consider the appropriate remedy for the City's civil contempt. In its memorandum decision, the court acknowledged that judicial remedies "must not be used to dictate details" when the City has discretion in exercising its duty to consider a building permit application. However, it also stated that "the egregiousness of the actions of the [City] suggest that the discretionary function in this set of facts was compromised and motivated by something very different than acting on behalf of the constituents that elected them." Based upon these findings, the court determined that the

#30277

necessary remedy for the finding of contempt was to order the City to issue Loves a building permit.

[¶15.]     The City appeals and raises two issues:

1.     Whether the court erred in holding the City in contempt of its mandamus order.

2.     Whether the court abused its discretion in ordering the City to issue Loves a building permit as a remedy for its finding of civil contempt.

### Standard of Review

[¶16.]     "We review a trial court's findings as to contempt under a clearly erroneous standard." *Taylor v. Taylor*, 2019 S.D. 27, ¶ 15, 928 N.W.2d 458, 465 (quoting *Muenster v. Muenster*, 2009 S.D. 23, ¶ 15, 764 N.W.2d 712, 717). "The trial court's findings of fact are presumptively correct and the burden is upon the appellant to show error." *Id.* (quoting *Grode v. Grode*, 1996 S.D. 15, ¶ 19, 543 N.W.2d 795, 801). "We review conclusions of law under a *de novo* standard, with no deference to the trial court's conclusions of law." *Harksen v. Peska*, 2001 S.D. 75, ¶ 9, 630 N.W.2d 98, 101 (citing *Mid Century Ins. Co. v. Lyon*, 1997 S.D. 50, ¶ 4, 562 N.W.2d 888, 890). We review a court's remedy for a finding of contempt for an abuse of discretion. *Hiller v. Hiller*, 2018 S.D. 74, ¶ 19, 919 N.W.2d 548, 554 (citations omitted).

### Analysis

#### 1.     *Circuit court's finding of contempt*

[¶17.]     A party seeking civil contempt must prove four elements: "(1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Id.* ¶ 20 (quoting

*Keller v. Keller*, 2003 S.D. 36, ¶ 9, 660 N.W.2d 619, 622). "The purpose of the civil contempt is 'to force a party "to comply with orders and decrees issued by a court in a civil action[.]"'" *Taylor*, 2019 S.D. 27, ¶ 39, 928 N.W.2d at 470-71 (quoting *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 23, 729 N.W.2d 335, 344).

[¶18.]     The City does not contest the first three elements. Thus, the only issue is whether the City "willfully or contumaciously disobeyed" the circuit court's order. To make a finding of a "willful or contumacious disobedience" of an order, the order "must state the details of compliance in such clear, specific and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon [him]." *Id.* (quoting *Keller*, 2003 S.D. 36, ¶ 10, 660 N.W.2d at 622).

[¶19.]     The City argues that the circuit court's order only required the City to "consider and apply SDCL 6-1-17 and hold another vote." From the City's perspective, it did exactly this. The City argues that it held a conflict-of-interest analysis pursuant to SDCL 6-1-17, determined that no conflicts of interest existed, and then voted on Loves' building permit application. The City argues that it was held in contempt not because it did not follow the required procedures, but because it reached a result that was counter to the court's "unspoken expectations."

[¶20.]     Loves responds by arguing that the City disobeyed the court's unambiguous order because it failed to "follow both the letter and spirit of the Order which implicitly required the City to apply the applicable law and standards." According to Loves, the City merely went "through the motions" in conducting its conflict-of-interest analysis and considered "inapplicable factors on zoning, while

ignoring factors applicable to building permit applications." Loves argues that the City failed to apply the correct conflict-of-interest standards established by SDCL 6-1-17 and argues the City failed to consider *Hanig v. City of Winner*, 2005 S.D. 10, 692 N.W.2d 202. Loves asserts that SDCL 6-1-17 and *Hanig* require a city council member to be disqualified from discussing or voting on any issue in which they have a direct or indirect pecuniary interest.

[¶21.] In its contempt order, the circuit court stated that the City may not "feign ignorance of the standard before them" by choosing to only consider whether each member had a direct pecuniary interest that would subject them to disqualification. In support of this conclusion, the court stated that the City should have known that it was expected to consider this Court's holdings in *Holborn v. Deuel Cnty. Bd. of Adjustment*, 2021 S.D. 6, 955 N.W.2d 363 and *Hanig*, 2005 S.D. 10, 692 N.W.2d 202, which discuss "indirect pecuniary interest[s]" as potential grounds for disqualification.

[¶22.] In finding the City in contempt, the circuit court concluded that the failure to consider indirect pecuniary interests amounted to willful disobedience of its order. The court also highlighted procedures the City undertook that differed from other building permit applications, including the City's slow walking of Loves' application and its reliance on zoning factors the court previously determined were not applicable to the Property.

*a. Conflict of interest analysis*

[¶23.] In *Holborn,* we addressed the standards for disqualification under SDCL 6-1-17.

> The statute specifically requires disqualification in the following two instances: (1) [t]he official has a direct pecuniary interest in the matter before the governing body; or (2) if [a]t least two-thirds of the governing body votes that an official has an identifiable conflict of interest prohibiting the official from voting on a matter. Absent these two mandatory grounds for disqualification, SDCL 6-1-17 leaves the decision of whether an elected or appointed public official can be fair and unbiased to the conscience and anticipated good judgment of each official in carrying out his or her duties.

*Holborn* 2021 S.D. 6, ¶ 31, 955 N.W.2d at 377 (internal quotation and citations omitted) (alterations in original). We explained in *Holborn* that "[a]bsent such a direct pecuniary interest, the plain language of SDCL 6-1-17 leaves the disqualification decision exclusively to the official's judgment, or the collective vote of at least two-thirds of the governing body when any other potential conflict is disclosed or identified." *Id.* ¶ 32.

[¶24.] The City Council scheduled a separate meeting to identify any conflicts of interest prior to considering Loves' application. The minutes from the meeting show that the City Council discussed whether any member had a direct pecuniary interest. The City attorney also advised each member to conduct a "self-analysis" for any conflict of interest they may possess. The City Council was instructed that the body must also consider whether any member had a conflict of interest under the statute. The City Council was told that any member could move for the disqualification of another member "[and there would need to be] a second and . . . a 2/3 vote of the council" confirming that a conflict of interest by one of the members requires disqualification. Special Counsel for the City further explained that a conflict of interest is a "'direct pecuniary gain' and the decision rests exclusively on

the city council." Following this discussion, no councilmember self-identified a conflict of interest and there were no motions asserting that another member should be disqualified because of a conflict of interest.

[¶25.] These steps complied with the express terms of the Mandamus Order requiring the City "to review and determine whether any member of the City Council is disqualified as provided under SDCL 6-1-17." In finding the City in contempt, the court determined that the City's conflict of interest analysis pursuant to SDCL 6-1-17 was inconsistent with *Hanig* and was narrower than our application of SDCL 6-1-17 in *Holborn*.[6] However, the Mandamus Order did not direct, nor could it have directed, the City Council to exercise its discretion to disqualify any member for some other possible conflicts of interest, such as an indirect pecuniary interest. Unlike the due process inquiries undertaken by the circuit courts and this Court in *Holborn* or *Miles* when considering petitions for writs of certiorari, the only question before the circuit court here was whether there was a willful and contumacious violation of the court's directive in its mandamus order that the City comply with SDCL 6-1-17. Absent a direct pecuniary interest, SDCL 6-1-17 does

---

6. *Hanig* has no application to SDCL 6-1-17 as it was decided prior to the enactment of the statute and was decided on due process grounds that we have since modified. *See Hanig*, 2005 S.D. 10, ¶ 10, 692 N.W.2d at 205-06; *see also Holborn*, 2021 S.D. 6, ¶ 27, 955 N.W.2d at 375; *Miles v. Spink Cnty. Bd. of Adjustment,* 2022 S.D. 15, ¶ 37 n.15, 972 N.W.2d 136, 149 n.15. Further, *Holborn* was clear that "[a]bsent [ ] a direct pecuniary interest, the plain language of SDCL 6-1-17 leaves the disqualification decision exclusively to the official's judgment, or the collective vote of at least two-thirds of the governing body when any other potential conflict is disclosed or identified." 2021 S.D. 6, ¶ 32, 955 N.W.2d at 377. These types of discretionary and subjective determinations do not easily lend themselves to a finding of contempt.

not authorize a court to intervene in either an individual member's subjective conflict determination or the City Council's discretionary determination of whether a member has a conflict of interest requiring disqualification.

[¶26.] A finding of a willful and contumacious disobedience requires the order to "state the details of compliance in such clear, specific and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon [them]." *Taylor*, 2019 S.D. 27, ¶ 39, 928 N.W.2d at 471 (quoting *Keller*, 2003 S.D. 36, ¶ 10, 660 N.W.2d at 622). Given the limited directive provided in the circuit court's order, its finding that the City willfully and contumaciously failed to obey the order was clearly erroneous. Additionally, for the reasons stated above, the court also erred as a matter of law by misapplying SDCL 6-1-17 when it found the City in contempt.

*b. Consideration of the building permit*

[¶27.] The circuit court also found the City in contempt for failing to comply with its Mandamus Order requiring the City to "discuss and vote upon [Loves'] commercial building permit application." In doing so, the court found that the City considered factors outside of the City's building ordinances and based its decision on non-applicable zoning considerations and "did not undertake" a meaningful attempt to comply with the court's order. The court also found that Loves' building permit application was compliant with the City's building code requirements.

[¶28.] At the order to show cause hearing, Loves questioned whether the City improperly considered its zoning ordinances that were previously determined to "not apply to the subject property." At the hearing, the City's mayor and two other

members of the City Council were asked about their reasons for denying Loves' building permit.[7] The mayor testified that any answer providing specific reasons for why each councilmember denied the building application would "in all honesty, [be] speculation and opinion[.]" However, the mayor indicated that it was understood that the zoning ordinance did not apply to Loves' building permit application. Hustead also testified that "zoning [ ] wasn't a consideration" in voting to deny Loves' building permit application and that the City Council was "very diligent in doing everything related to the [c]ourt's [o]rder, and we proceeded in a very methodical fashion[.]" Welsh also testified that zoning ordinances did not play a role in the City Council's decision making.

[¶29.]    Furthermore, the City Council's reliance on health, safety, and other well-being considerations in its building permit decision was not in conflict with the circuit court's order. The court's order simply required the City to reconsider Loves' building permit application. The Mandamus Order did not dictate the criteria the City Council must consider, nor did the court order the City to issue a building permit. As the court properly recognized in its Mandamus Order, "mandamus is inappropriate in dictating how the Council must vote, as this is purely a discretionary function. Therefore, the Court has no authority to require approval of

_____

7.    Although there were no objections to this examination, we again "question the propriety of deposing the decision maker in a quasi-judicial proceeding." *See Powers v. Turner Cnty. Bd. of Adjustment*, 2022 S.D. 77, ¶ 24 n.3, 983 N.W.2d 594, 603 n.3 (alteration omitted) (quoting *Adolph v. Grant Cnty. Bd. of Adjustment*, 2017 S.D. 5, ¶ 14 n.3, 891 N.W.2d 377, 382 n.3); *see also Miles*, 2022 S.D. 15, ¶ 24 n.12, 972 N.W.2d at 145 n.12 (noting that "[w]hile deposing quasi-judicial board members about their decision-making process is generally disfavored," the depositions at issue "focused primarily on the Board's alleged biases or conflicts of interest").

the building permit." The City reconsidered the building permit, as ordered by the court, and exercised its discretion to deny the permit.

[¶30.] Nevertheless, Loves argues that the circuit court properly found the City in contempt based upon the process used by the City in considering Loves' application and because the application otherwise complied with the Ordinance requirements for issuing a permit. Loves cites the court's concern with the City's "slow walk" handling of the application and that the City treated Loves' application differently from other building permit applications by soliciting public input on the permit application. Significantly, however, the court's order did not specify the process to be used by the City for considering the building permit and Loves fails to identify any explicit directive in the Mandamus Order that the City violated by taking additional time to seek legal advice from counsel concerning the court's Mandamus Order, and to hear from citizens about Love's building permit application. *See Taylor*, 2019 S.D. 27, ¶ 39, 928 N.W.2d at 471 ("To form the basis for a subsequent finding of contempt, an order must state the details of compliance in such clear, specific and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon [her].") (alteration in original) (quoting *Keller*, 2003 S.D. 36, ¶ 10, 660 N.W.2d at 622).

[¶31.] We conclude that the circuit court clearly erred by finding that the City willfully and contumaciously violated the court's order to reconsider and vote on Loves' requested building permit.

### 2.     *The circuit court's remedy for contempt.*

[¶32.]     Having determined the circuit court erred in finding the City in contempt, we briefly address the court's "remedy" for its finding of contempt, because of its inconsistency with the purpose of civil contempt and its prominence in the context of this case.[8]

[¶33.]     "The purpose of civil contempt is to compel compliance with the court's order. Its sanction is coercive." *Harksen*, 2001 S.D. 75, ¶ 22, 630 N.W.2d at 102 (citing *State, Fall River Cnty., ex rel. Dryden v. Dryden*, 409 N.W.2d 648, 650 (S.D. 1987)). "The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court." *State v. Knight,* 3 S.D. 509, 54 N.W. 412, 413 (1893). A sanction "becomes coercive when the contemnor is allowed to purge himself of contempt. Without it, the sanction is merely punitive." *Harksen,* 2001 S.D. 75, ¶ 22, 630 N.W.2d at 102. Once the remedy for contempt becomes punitive rather than coercive, the remedy "exceeds the trial court's authority in a civil contempt proceeding." *Id.* ¶ 23 (finding that the entry of a specific permanent injunction as a remedy for civil contempt was punitive, not coercive and therefore denied the appellant the "right to purge himself and come into compliance" with the original order).

[¶34.]     The court's mandamus order required the City to do two things: (1) reconsider and vote on Loves' application for a building permit; and (2) conduct a

---

8.     The City and Loves extensively briefed the court's authority to order the City to issue a building permit under the doctrines of res judicata and law of the case. However, given our determination that the circuit court erred in finding the City in contempt, we decline to address these arguments.

conflict-of-interest analysis under SDCL 6-1-17 to determine whether any City Council member should be disqualified. Once the court found the City to be in contempt of this order, its authority was limited to imposing a coercive sanction that allowed the City to purge itself of contempt and come into compliance with the court's earlier order. *See Harksen*, 2001 S.D. 75, ¶ 22, 630 N.W.2d at 102. The City was given no such opportunity and, instead, was ordered to issue the building permit.

[¶35.] While the circuit court erred in the first instance in finding the City in contempt of its mandamus order, the circuit court's remedy also exceeded its authority by imposing a punitive, rather than coercive civil contempt remedy. Therefore, for the reasons stated above, we reverse the circuit court's finding of contempt and the order issuing a building permit to Loves.

[¶36.] KERN, SALTER, DEVANEY and MYREN, Justices, concur.