## *In re* TABER.

1. The original process under which a sheriff holds a prisoner committed for contempt should be retained by him, and not attached to his return to a writ of *habeas corpus.*

2. A special administrator's refusal to obey an order of a county court, directing him to turn over to the administrator all papers, effects, and assets in his hands belonging to the estate being administered, is a criminal contempt, which the court has inherent power to punish by commitment till the order is obeyed.

3. Laws 1890, Chap. 7, §§ 17, 18, provides that whenever a judge of a county court is connected by blood or affinity nearer than the fourth degree with any person interested in 'any probate matter therein, such fact shall be entered of record, and the proceeding certified to the circuit court of the county, which shall then have full jurisdiction thereof. The son of such a judge was interested in an estate in process of administration, as an attorney employed on a contingent fee. *Held,* that the judge's acts in the matter were voidable only, and not void, so as to render an order committing the administrator for contempt open to collateral attack.

4. Where a party cited for contempt appeared specially to contest the court's jurisdiction, and also appeared at the same time, and fully disclosed his reasons for disobeying the court's order, and stated that his acts were not intended as acts of contempt, but his sole desire was to determine his duties in the premises, such appearance constituted a general appearance, which waived an objection to the court's jurisdiction, because sufficient notice of the hearing was not given.

5. Failure to give a party cited for contempt time to consult with his attorneys, in order to determine what his duties are in the premises, is not such error as renders the order of commitment open to collateral attack by *habeas corpus.* ·

6 The decision of a county court on a hearing of a contempt proceeding, that there was no reason why its order should not be obeyed, is such as it was authorized to make, and error therein is not ground for the collateral attack by *habeas corpus* of an order of commitment based thereon.

7. Comp Laws, § 5972, provides that an appeal from an order granting letters of administration shall not stay the issuance thereof, where, in the judge's opinion, manifested by entry on the court's minutes, such issuance is necessary to preserve the estate. *Held,* that where nothing appeared to negative the presumption of such entry, and it did not appear that the undertakings executed on appeal contained the conditions necessary to stay proceedings, the county court's jurisdiction to issue a commitment for contempt in the case, after such appeal, would be sustained on collateral attack by *habeas corpus.*

8. Refusal by a judge of a county court to fix the amount of undertakings to be filed on appeal from an order granting letters of administration, though a duty which he might be compelled to perform, does not obviate the necessity of executing proper bonds in order to stay further proceedings by that court.

(Opinion filed March 29, 1900.)

Appeal from circuit court, Minnehaha county. Hon. E. G. SMITH, Judge

*Habeas corpus* by E. J. Taber, committed for contempt for his release from custody. From a judgment denying the writ, applicant appeals. Affirmed.

No briefs filed.

*W. H. Lyon, C. O. Bailey, U. S. G. Cherry, C. P. Bates,* and *T. H. Null,* for appellant.

*Paul T. Wilkes, H. E. Judge,* and *A. B. Kittredge,* for respondent.

HANEY, J. Appellant moved in the court below to be discharged from custody, because it appears upon the face of the return that there is no sufficient cause for his detention. The motion was denied. It is alleged in the return that appellant is in custody by virtue of an order of commitment for contempt, made by the county court of Minnehaha county. The original order of commitment and a certificate under the hand of the county judge, reciting certain proceedings in his court, are attached to, and made part of, the return. It may be observed, in passing, that the original process should have been retained by the sheriff, and that the return, with its several exhibits, is nothing more than the sheriff's pleading, but, for the purposes of the motion to discharge, all material facts recited therein are to be taken as true.

It appearing that appellant is in custody by virtue of process from a court legally constituted, he can be discharged only for one or more of the following causes: "(1) When the court has exceeded the limit of its jurisdiction, either as to the matter, place, sum or person. (2) Where, though the original imprisonment was lawful, yet by some act, omission or event, which has subsequently taken place, the party has become entitled to his discharge. (3) Where the process is defective in some substantial form required by law. (4) Where the process, though in proper form, has been issued in a case or under circumstances where the laws do not allow process or orders for imprisonment or arrest to issue. (5) When, although in proper form, the process has been issued or executed by a person either unauthorized to issue or execute the same, or where the person having the custody of the prisoner, under such process, is

not the person empowered by law to detain him. (6) Where the process appears to have [been] obtained by false pretense or bribery. (7) Where there is no general law nor any judgment, order or decree of a court to authorize the process, if in a civil suit, nor any conviction, if in a criminal proceeding." Comp. Laws, § 7841.

The scope of inquiry in this proceeding being thus clearly defined by the statute, there would seem to be little need of resorting to the case law of other states for the purpose of ascertaining to what extent contempt proceedings may be reviewed by the writ of *habeas corpus*. If the statute conflicted with the authorities, it would have to prevail. But it does not. It is in harmony with the modern American doctrine concerning the powers and duties of courts having authority to issue writs of *habeas corpus*. Some of the older authorities regarded jurisdiction of the matter and of the person sufficient to give the court jurisdiction to pronounce a judgment which could not be successfully assailed by this writ. The rule now supported by high and abundant authority and excellent reason is that the court must not only have jurisdiction over the person and the matter, but authority to render the particular judgment The judgment is not conclusive upon the question of the authority of the court to render it. That, as well as any other matter which would render the proceeding void, is open to inquiry. 7 Am. & Eng. Enc. Law (2d Ed.) 36. There are three essential elements necessary to render a conviction valid. These are that the court must have jurisdiction over the subject-matter, the person of the defendant, and authority to render the particular judgment or order. If either of these elements is lacking, the judgment or order is fatally defective.

Brown, Jur. §110. This view is sustained by an overwhelming weight of authority. It is expressed in our statute, and has been heretofore adopted by this court. In re McCain, 9 S. D. 57, 68 N. W. 163.

It appears from the sheriff's return that appellant, as special administrator of an estate being administered in the county court, failed and refused, without any excuse, to comply with an order of that court requiring him to forthwith deliver to the administrator all papers, effects, and assets of such estate in his possession. Does the law, to use the language of the statute, allow process or orders for imprisonment to issue under such circumstances? The statute expressly declares that when letters of administration have been granted the powers of the special administrator cease, and he must forthwith deliver to the administrator all the property and effects of the decedent in his hands. Comp. Laws, § 5749. Therefore the order which appellant disobeyed merely required the performance of a duty expressly enjoined by the law. Undoubtedly the county court had power to make such an order provided there was an administrator to whom the property should have been delivered, and it must be presumed, for the purposes of this discussion, that there was a duly appointed and qualified administrator. Then, the important inquiry arises whether the law allows the enforcement of such order by an order of imprisonment. Manifestly there are many valid orders, judgments, and decrees of courts in this state which cannot be thus enforced or executed. This is the precise situation upon the facts alleged in the return: A special administrator refuses, without any excuse, to deliver the property of the estate to the administrator. Under the law and order of the county court, the latter is entitled to

immediate possession. What is the remedy? Shall suit be brought upon the special administrator's bond, shall an action for the recovery of specific personal property be commenced, or shall the special administrator be committed to jail until he complies with the order of the county court, and performs the duty imposed upon him by the statute? It is held in California, under statutes defining the incidental powers of courts, and regulating the procedure in contempt cases, which do not exist in this state, that obedience to such an order as the one here involved may be compelled by proceedings as for a con-tempt. *Ex parte* Smith, 53 Cal. 204; *Ex parte* Cohn, 55 Cal. 193. Considering the order as interlocutory and necessary to bring the proceeding to a final decree, it would seem that the probate court in Vermont would have power to enforce it by imprisonment. *In re* Bingham, 32 Vt. 329. In Indiana an action on the official bond would seem to be the proper and only remedy. Swift v. State, 63 Ind. 81; *Ex parte* Wright, 65 Ind. 504. Other cases, more or less analogous to the one at bar, might be cited, but they would merely serve to show the substantial difference in the statutes of the several states on the subject of contempt. Hence, in ascertaining the powers of the county court in this state, it will be necessary to consult our own constitution and statutes in the light of recognized principles of law. If power exists to coerce obedience to this order of the county court, it exists by reason of the inherent powers of that court, and not by reason of any express statutory authority. The county court is a court of record created by the constitution. In all probate matters its proceedings are to be construed in the same manner, and with like intendments as the proceedings of courts of general jurisdiction, and to its records, orders, judgments,

and decrees must be accorded the same force, effect and legal presumptions that are accorded to the records, orders, judgments, and decrees of circuit courts. Const. Art. 5, § 20; Comp. Laws, § 5651; Laws 1891, Chap. 4; Matson v. Swenson, 5 S. D. 191, 58 N. E. 570.

It is conclusively settled, by a long line of decisions, that at common law all courts of record have inherent power to punish criminal contempts. In the absence of a constitutional provision on the subject, the better opinion seems to be that such power cannot be limited or regulated by the legislature. Nor does the constitutional provision, that the trial of all crimes shall be by jury, take away the right. Rap. Contempt, §§ 1, 11. Where this power is inherent, and cannot be limited or regulated by legislation, statutes conferring the power in particular cases will not be construed as excluding it by implication in others. Nebraska Children's Home Soc. v. State (Neb.) 78 N. W. 267. The county court in this state being a court of general jurisdiction, in respect to all probate matters, created by the constitution, it has inherent power to punish all criminal contempts, although the statutes designate particular cases in which it may compel obedience to its orders by proceedings as for a contempt.

It would be difficult, doubtless impracticable, to lay down a general rule by which, in all cases, to distinguish civil and criminal contempts, with one or the other of which every act of contempt must be classified, but substantially the main distinction is this: Civil contempts are those *quasi* contempts which consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court, while crimi-

nal contempts are all those acts in disrespect of the court, or of its process, or which obstruct the administration of justice, or tend to bring the court into disrepute, such as disorderly conduct, insulting behavior in the presence or immediate vicinity of the court, or acts of violence which interrupt its proceedings, and also disobedience or resistance of the process of the court, interference with property in the custody of the law, misconduct of officers of the court, and other acts of like character. Rap. Contempt, § 21.

Did appellant's acts, as shown by the sheriff's return, constitute a criminal contempt? He was an officer of the court, created by it, and a trustee as to all parties interested in the estate. There was no dispute concerning the property in his hands; no dispute concerning his duty to deliver it to the administrator; performance of such duty was demanded; and he refused to perform it, without any excuse. His refusal was wilful, and its effect was to obstruct the administration of justice. It is the right and duty of the county court to proceed with the due administration of this estate. It cannot do so unless its order requiring delivery of the property to the administrator is complied with. If it cannot commit for contempt, it is without power to proceed in a matter of which it has jurisdiction, and concerning the disposition of which its duty is plainly prescribed by the statutes. The administration of justice has been obstructed by the wilful misconduct of an officer of the court. The court should have, and we believe it has, inherent power to employ adequate means to accomplish the objects for which it was constituted. We think appellant was, upon the facts admitted to exist for the purposes of the motion to discharge, guilty of a criminal contempt, and that the

county court had power to commit him to jail until he shall
have complied with its order, or shall have shown some valid
reason for not doing so. His motion for an order discharging
him from custody, based upon the alleged insufficiency of the
sheriff's return, was properly denied.

Appellant filed a voluminous answer to the sheriff's return,
which was stricken out on the ground, *inter alia*, that it did not
state facts sufficient to constitute a defense or answer to the
return. For the purpose of determining whether the circuit
court erred in its ruling in this respect, the well-pleaded alle-
gations of the answer must be taken as true. It is alleged that
prior to making the order requiring appellant to deliver the
property of the estate to the administrator the judge of the
county court became disqualified, because his son, an attorney
at law, had contracted with certain persons to conduct the
prosecution of their claim and petition to be adjudged sole
heirs of the deceased, for a contingent fee. If the facts alleg-
ed, respecting this matter, are true, the judge was disqualified.
Vine v. Jones, 13 S. D. 54, 82 N. W. 82.

However, unless the acts of the county judge, after becom-
ing disqualified, were void, the allegations respecting his son's
interest in the estate are immaterial in this proceeding. While
it is well settled by the common law that no judge ought to act
where, from interest or from any other cause, he is supposed
to be partial to one of the suitors, yet his action in such a case
is regarded as an error or irregularity not affecting his juris-
diction, to be corrected by a vacation or reversal of his judg-
ment, except in the case of those inferior tribunals from which
no appeal or writ of error lies. In most of the states, statutes
have been passed which, in direct terms, prohibit judges from

acting in certain specified cases. And the general effect of the statutory prohibitions in the several states is undoubtedly to change the rule of the common law so far as to render those acts of a judge involving the exercise of judicial discretion, in a case wherein he is disqualified from acting, not voidable merely, but void. The language of the statutory prohibition to which this effect is attributed is, generally, that the judge in the cases mentioned therein "shall not sit," or "shall not act," or "shall not preside," or "shall not have any voice," or "cannot sit." Freem. Judgm. §§ 145, 146; Hall v. Thayer, 105 Mass. 219; Frevert v. Swift, (Nev.) 11 Pac. 273; Oakley v. Aspinwall, 3 N. Y. 547; Abram v. State (Tex. Cr. App.) 20 S. W. 987; *In re* White's Estate, 37 Cal. 190; Horton v. Howard, 79 Mich. 642, 44 N. W. 1112. In all these cases, except the one in Massachusetts, it will be observed there was a direct and positive statutory inhibition. Numerous other decisions have been examined in which the acts of disqualified judges have been reviewed upon appeal, or assailed by direct attack, wherein expressions are employed which would indicate that such acts are void, and not merely voidable; but they are not to be considered in this proceeding, because this is a collateral attack upon the judgment or order of a court of general jurisdiction. Such was the case of Bank v. McGuire, 12 S. D. 226, 80 N. W. 1074.

The statute in this state applicable to the subject under discussion reads as follows: "Whenever the county judge of any county is a party to or personally interested in any proceeding in any probate matter therein or connected by blood or affinity to any person so interested nearer than the fourth degree, or when he is named as a legatee or devisee, or executor or trustee in a will or is a witness thereto. such fact or facts

shall be entered upon the records of such court and certified to the circuit court of such county: provided, that in case the judge is interested only as a creditor, no change need be made except in relation to his claim. Upon the filing of a copy of such certificate in the office of the clerk of the circuit court, such circuit court shall have full and complete jurisdiction in all matters pertaining to such estate and may make all orders and take all proceedings therein, which might have been made or taken in the county court, if the judge thereof had not been interested or a party as aforesaid." Laws 1890, Chap. 78 §§ 17, 18. This statute does not in express terms inhibit a judge who is disqualified under its provisions from continuing to act. Does not declare that he shall not do so. Of course it is his duty to certify the proceedings to the circuit court. He can be compelled to certify, and his orders may be reversed upon appeal. But we are not inclined to hold that such orders are subject to collateral attack. Nearly all, if not all, probate orders are appealable. Judges are usually reluctant to act where any question arises as to their interest in the litigation, and circuit courts have ample power to compel the transfer of all matters in which county judges are interested. Under these conditions, the rights of litigants cannot suffer material injury; while, on the other hand, should we conclude that the orders of disqualified county judges are void, consequences of the most serious character might result. The validity of proceedings, involving title to real property, long acquiesced in and apparently regular, would depend upon the weight of parol testimony received upon the trial of any collateral action. If, therefore, the county judge was disqualified by reason of his son's interest in the estate, his acts in relation thereto were

merely voidable, and cannot be inquired into in this proceeding.

It is also alleged in appellant's answer that, when served with the citation to show cause why he should not be attached for contempt, he appeared specially, and objected to the jurisdiction of the court, on the grounds that an appeal had been taken from the order appointing an administrator which operated as a supersedeas; that the judge was disqualified because of his sons' interest in the estate; and that sufficient notice of the citation had not been given. It is also alleged that he appeared at the same time, and fully disclosed his reasons for refusing to deliver the property, and stated to the court that none of his acts were intended as acts of contempt, but that his only desire and purpose was to determine what his duties were in the premises. As we construe the answer, taking all of its allegations together, it shows that appellant made a general appearance, and he is not in position to assert that the court was without jurisdiction because sufficient notice of the hearing was not given. Were it conceded that the court should have given appellant more time to consult with counsel, and to determine what were his duties under the circumstances, its action was at most merely erroneous, and not reviewable in this proceeding. The court had authority to cite the appellant to appear. He appeared, and the court, upon the hearing, decided there was no reason why its order should not be obeyed. However erroneous such decision may have been, it was one the court was authorized to make, and the order based thereon is not void.

It is further alleged "that on the 8th day of February, 1900, after the making and entry of the said order in said

county court appointing said William Van Eps as administrator of said estate, Mary A. Vine, one of the said petitioners in said county court, and soon thereafter Hosmer H. Keith, another of said petitioners, and this petitioner, caused each a notice of appeal to be duly prepared and filed in said county court, and each filed therein, pursuant to such notice of appeal, an undertaking, as required by law, from the said order of said county court to the circuit court of the county of Minnehaha, the said appeals, and each of them, being taken upon the questions both of law and fact involved, and from the whole of the said order, and proceedings in the said county court; and that thereupon all the papers, files and records of the said proceedings in the said county court up to that time were duly transmitted, by the clerk of the said county court, to the clerk of the said circuit court." If the taking and perfecting of either of the alleged appeals from the order appointing an administrator operated as a supersedeas, the county court ceased to have authority to compel the delivery of the estate to Van Eps. But an appeal from an order granting letters of administration does not stay the issuing of such letters, where, in the opinion of the county judge, manifested by an entry upon the minutes of the court, the preservation of the estate requires that such letters should issue. Comp. Laws, § 5972. There is nothing in the answer to overcome the presumption that such an entry was made in this case. Nor does it affirmatively appear that any undertaking containing the conditions required to stay proceedings was executed. *Id.* § 5968. The provision that an executor's or administrator's official bond stands in the place of an appeal bond has no application, because it is clear that the word "administrator" does not embrace a special administrator. *Id.* §§ 5748, 5981.

It is further alleged that appellant appealed from the order requiring him to deliver the property, and from the order of commitment for contempt, but it fails to allege that bonds containing proper conditions were executed, and it appears upon the face of the answer that the county judge refused to fix the amount of any undertakings for that purpose. It may have been his duty to do so,—a duty which he might have been compelled to perform,—but the operation of his orders was not stayed in the absence of undertakings. the amounts of which were fixed as required by law. Comp Laws, § 5967. We think appellants answer to the sheriff's return fails to present any material issue of fact, and that the sheriff's motion to strike, which was in legal effect a demurrer, was properly sustained. Finding no reversible error in the record, the judgment or order of the circuit court, remanding appellant to the custody of the sheriff of Minnehaha county, is affirmed.