#23959-aff in pt & rev & rem in pt-DG

**2007 SD 17**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ED SAZAMA,                                        Plaintiff, Respondent
                                                  and Appellant,

   v.

STATE OF SOUTH DAKOTA,
EX REL., DAWN MUILENBERG,                         Defendant, Petitioner
                                                  and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BON HOMME COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GLEN W. ENG
Judge

* * * *

THOMAS E. ALBERTS
Avon, South Dakota                                Attorney for plaintiff,
                                                  respondent and appellant.


LAWRENCE E. LONG
Attorney General
Pierre, South Dakota

DOUGLAS R. KETTERING
Special Assistant Attorney General
Yankton, South Dakota                             Attorneys for defendant,
                                                  petitioner and appellee.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 28, 2006

OPINION FILED **02/21/07**

#23959

GILBERTSON, Chief Justice

[¶1.] Ed Sazama (Sazama) appeals a judgment of contempt for failure to pay child support. Sazama also appeals an order imposing ten days in jail for each month that he fails to pay child support upon the filing of an affidavit of failure to pay. We affirm in part and reverse and remand in part.

## FACTS AND PROCEDURE

[¶2.] Sazama and Dawn Muilenberg (Muilenberg) had two children during their relationship. After the breakup of their relationship in 1997, a court order dated March 4, 1998, decreed that the children would reside with Muilenberg and Sazama was ordered to pay child support in the amount of $386.00 per month beginning November 1, 1997. The order also required Sazama to pay $256.00 per month for child care expenses and an additional $50.00 per month in arrearages.

[¶3.] After the 1997 breakup, Sazama moved to Colorado and obtained employment. His wages were garnished to pay the child support order until 2000 when he was injured and was no longer working. Sazama became homeless and lived on the streets in Colorado until he moved back to South Dakota sometime in 2002. Upon returning to South Dakota, he remained homeless and lived on the streets in Yankton for approximately eighteen months until he moved in with his girlfriend. He lived with his girlfriend for approximately another eighteen months prior to this appeal. Sazama claims to be an alcoholic and unable to control his drinking.

[¶4.] Muilenberg moved from South Dakota to Nebraska to be closer to her family after the child support judgment and order were entered. She did receive some child support from Sazama while living in Nebraska. However, by the time of

-1-

the contempt proceeding, Sazama had paid a total of $2,624.88 in 1997; $589.55 in 2001; $255.20 in 2002; and $126.00 in 2004 in child support, and had arrearages totaling $49,224.81 while Muilenberg was domiciled in Nebraska. Muilenberg returned to South Dakota in 2003. Child Support Enforcement records indicate Sazama failed to make any payments during the eight months Muilenberg lived in South Dakota before filing the present action.

[¶5.] In August 2005, the State of South Dakota began contempt proceedings against Sazama, who was served with an order to show cause based on an affidavit of arrearages executed by Joan Gudahl, Officer of Child Support Enforcement (Gudahl). The affidavit showed that Sazama had accrued child support arrearages in the amount of $62,064.81 from September 1, 1996 through August 2005. Child Support Enforcement records indicated that Sazama failed to make any payments for the support of his children commencing July 2003 through August 2005.[1]

[¶6.] Counsel was appointed for Sazama, and a hearing was held on the matter on November 9, 2005. Sazama testified that he had begun working for BP Painting on October 10, 2005, and prior to that had done yard work and odd jobs for cash in 2004 and 2005. He also testified that he had applied for and been denied Social Security disability income, which was denied due to the agency's assessment that he had some ability to work. Sazama further testified he was aware he had a

---

1. The South Dakota Child Support Enforcement records show nothing from July 2003 through August 2005, although the circuit court's findings of fact reflect the $126.00 payment in 2004.

child support obligation payable to Muilenberg and believed it to be somewhere in the range of $300 per month, although he testified the State of Colorado had garnished approximately $200 per week during his employment in 1999 and 2000. Sazama presented no legal excuse for his failure to pay child support during the time he was employed or unemployed. Instead, he conceded that he did not make any attempt at payment after leaving Colorado, offering as his reason that he did not know where Muilenberg was living.

[¶7.] The circuit court found Sazama was aware of the child support order, failed to comply with the order, and had no legal excuse for non-compliance. It also found he had the ability to provide for his children but failed to do so, and found him in contempt of court for failure to pay child support. The circuit court sentenced Sazama to ten days in the Bon Homme County Jail beginning the first of each month if he failed to pay the child support for the previous month. It entered a judgment effective through October 27, 2005, in the amount of $62,783.63 and informed Sazama he could purge himself of the contempt by making his required monthly payments as determined based on his monthly income. The court also noted that it believed Sazama was using his alcoholism as an excuse not to work, and that he needed to seek assistance with his addiction and maintain employment. The circuit court entered findings of fact and conclusions of law consistent with its oral rulings.

[¶8.] Sazama appeals, raising three issues for this Court's review:

1. Whether the circuit court had jurisdiction of the civil contempt proceedings when the affidavit in support of the show cause order did not include the necessary jurisdictional allegations.

2. Whether the circuit court erred when it found Sazama had knowledge of an order, the ability to comply with the order, and that he had willfully or contumaciously disobeyed the order.

3. Whether the circuit court's order setting the penalty for continued disobedience violated Sazama's due process rights when the penalty imposed did not provide a method for Sazama to purge himself of the contempt.

## STANDARD OF REVIEW

[¶9.] "The issue of jurisdiction may be raised at any time and is reviewed by this [C]ourt de novo." Wold Family Farms, Inc. v. Heartland Organic Foods, Inc., 2003 SD 45, ¶12, 661 NW2d 719, 723 (citing Devitt v. Hayes, 1996 SD 71, ¶6, 551 NW2d 298, 300). A circuit court's remedy or punishment for contempt of court is reviewed under the abuse of discretion standard. Id. (citing Harksen v. Peska, 2001 SD 75, ¶10, 630 NW2d 98, 101). However, when a claim asserts a violation of a constitutional right, our standard of review is de novo. State v. Ball, 2004 SD 9, ¶21, 675 NW2d 192, 199 (citing State v. Hodges, 2001 SD 93, ¶8, 631 NW2d 206, 209). "We review the circuit court's conclusions of law under the de novo standard." A-G-E Corp. v. State, 2006 SD 66, ¶13, 719 NW2d 780, 785 (citations omitted). We review the circuit court's findings of fact under the clearly erroneous standard. Keller v. Keller, 2003 SD 36, ¶8, 660 NW2d 619, 622 (quoting Harksen, 2001 SD 75, ¶9, 630 NW2d at 101).

## ANALYSIS AND DECISION

[¶10.] **1. Whether the circuit court had jurisdiction of the civil contempt proceedings when the affidavit in support of the show cause order did not include the necessary jurisdictional allegations.**

-4-

[¶11.]     Our prior decisions have treated the failure to precisely plead all factual elements of contempt as a "jurisdictional" defect; *i.e.*, one that deprives the court of subject matter jurisdiction. Our seminal case of *Thomerson v. Thomerson*, underscored this premise stating that "[u]nless every material fact constituting the alleged violation is stated in the affidavit, the court has no jurisdiction." 387 NW2d 509, 513 (SD 1986) (citation omitted). *Thomerson's* statement comes from a line of authorities originating in 1871. In our view these cases are inconsistent with current understandings of notice pleading and subject matter jurisdiction. Having reconsidered this matter, we now discontinue the practice of attaching "jurisdictional" consequences to technical pleading deficiencies in pleadings seeking civil contempt.

[¶12.]     *Thomerson* is based upon *Simmons v. Simmons*, 66 SD 76, 80, 278 NW 537, 539 (1938) (citing *In re* Solberg, 51 SD 246, 213 NW 9 (1927); Freeman v. City of Huron, 8 SD 435, 66 NW2d 928 (1896); State v. Sweetland, 3 SD 503, 54 NW 415 (1893)). The jurisdictional language at issue originated in *Sweetland's* statement that the affidavit must "'show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized. . . .'" 3 SD at 506, 54 NW at 416 (quoting Batchelder v. Moore, 42 Cal 412, 414-15 (1871)) (citations omitted).[2] The

---

2.     It can certainly be argued that *Sweetland's* quoted language did not require that *every* factual element of contempt must be pleaded for the court to have subject matter jurisdiction to hear the case. In our view, this quoted language should only be taken to mean that the complaint must set forth sufficient facts to show that the nature of the case is one over which the court has the power to act.

(continued . . .)

cases following *Sweetland* expanded this jurisdictional language to require that every material fact constituting the alleged contempt must be in the affidavit or the court has no jurisdiction. *Thomerson*, 387 NW2d at 513 (citation omitted).[3]

_____

(. . . continued)

> However, the quoted *Sweetland* language was expanded to unequivocally state that "[u]nless every material fact constituting the alleged violation is stated in the affidavit, the court has no jurisdiction." *Thomerson*, 387 NW2d at 513 (citation omitted). Stretched to this extent, *Sweetland's* language is of dubious precedential value because it relies upon *Batchelder,* a California case interpreting a California *statute* that specifically required "an affidavit of the facts constituting the contempt. . . ." 42 Cal at 415. South Dakota has no comparable statutory requirement. In fact, as explained *infra* ¶17, South Dakota courts have inherent subject matter jurisdiction in cases of contempt.

3.    For example, in *Freeman*, the affidavit failed to state a case of contempt, and the case was dismissed using jurisdictional language. 8 SD at 435, 66 NW at 929. However, in affirming the dismissal, *Freeman* extended *Sweetland's* language stating: "the court did not have jurisdiction to inquire into [the defendant's] conduct, unless every material fact constituting the alleged violation is stated in the affidavit upon which the contempt proceeding is based." 8 SD at 439, 66 NW at 929 (citing *Sweetland*, 3 SD 503, 54 NW 415).

*Solberg*, which was based on *Freeman* (and *Sweetland*), continued this unduly expansive extrapolation. Like *Freeman, Solberg* stated "that the court has no jurisdiction to inquire into the conduct of parties charged with contempt, 'unless every material fact constituting the alleged violation is stated in the affidavit upon which the contempt proceeding is based.'" 51 SD at 248, 213 NW at 10, 11 (citations omitted). *Simmons* merely reiterated the language of *Freeman* and *Solberg*. *See,* 66 SD at 80, 278 NW at 539.

With regard to *Solberg,* it must be noted, that the contemnor had been arrested without *any* affidavit, complaint, or document invoking the court's jurisdiction. 51 SD at 247-48, 213 NW at 10. Therefore, the Court was merely stating that some jurisdictional document was required when the contempt was not committed in the presence of the court. The actual holding of the case was:

> Where the acts constituting the contempt are committed in the immediate presence of the court no affidavit or sworn complaint charging the acts is required, for the judge has personal knowledge of the acts. But where the acts relied upon as

(continued . . .)

[¶13.] However, this jurisdictional analysis does not reflect modern notice pleading jurisprudence. Under SDCL 15-6-8(a), pleadings need only contain "(1) [a] short and plain statement of the claim showing that the pleader is entitled to relief; and (2) [a] demand for judgment. . . ." Thus, " '[u]nder the Rules[,] a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. Cases are generally to be tried on the proofs rather than the pleadings.' " 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*: Civil 3d § 1182 (quoting De Loach v. Crowley's Inc., 128 F2d 378, 380 (5thCir 1942)). That is because:

> [T]he function of a pleading in [current] practice is to inform the opposing party and the court of the *nature of the claims* and defenses being asserted by the pleader and, in case of an affirmative pleading, *the relief being demanded. . . .* The rules reflect a realization that the supposed effectiveness of pleadings in narrowing and defining the issues - a conception that characterized the common law and code procedural systems - is largely a myth, this function being more effectively performed by discovery, summary judgment, and pretrial conferences.

*Id*. (emphasis added). Thus, under modern pleading practice, pleadings need only reflect the nature of the claim asserted and the relief requested.

[¶14.] Similarly, subject matter jurisdiction is only dependent upon the nature of the proceeding and the relief sought. Subject matter jurisdiction is:

_____

(. . . continued)

> constituting the contempt are not committed in the presence of the court, such affidavit or sworn complaint is necessary to give the court jurisdiction to proceed in the matter.

*Id*. at 248, 213 NW at 10.

> "a court's competence to hear and determine cases of the general
> class to which proceedings in question belong; the power to deal
> with the general subject involved in the action . . . deals with the
> court's competence to hear a particular category of cases."

State *ex rel* Joseph v. Redwing, 429 NW2d 49, 51 (SD 1988) (involving a case of
contempt) (citation omitted). Thus, subject matter jurisdiction is not determined by
technical pleading requirements but by " '[t]he subject, or matter presented for
consideration; the thing in dispute; the right which one party claims as against the
other, as the right to divorce; . . . [the n]ature of cause of action, and of relief sought.
. . .' " *Redwing*, 429 NW2d at 51 (citation omitted). Because South Dakota circuit
courts are courts of general jurisdiction,[4] they have the power to hear the class or
category of cases seeking contempt for the contumacious failure to comply with
child support orders. As this Court noted over 100 years ago, the "power . . . to
coerce obedience to [an] order of the . . . court . . . exists by reason of the inherent
powers of that court, and not by reason of any express statutory authority." *In re
Taber*, 13 SD 62, 67, 82 NW 398, 400 (1900). Further, this power to hear cases of
contempt includes the power to coerce compliance through punishment. There can
be " 'no doubt that the power to punish for contempt is an inherent one, for,
independent of legislation, it exists, and has always existed, in the courts of
England and America.' " State v. Shumaker, 157 NE 769, 775 (Ind 1927) (quotation
and citations omitted). For these reasons, the circuit court unquestionably had

---

4. *See* Christians v. Christians, 2001 SD 142, ¶45, 637 NW2d 377, 386
   (Konenkamp, J., concurring specially) (citing SD Const Art V section 1)
   (stating that South Dakota's circuit courts have "general jurisdiction to hear
   all civil actions").

subject matter jurisdiction to consider this case involving civil contempt. *See Redwing*, 429 NW2d at 51.

[¶15.] Today's decision, like that in an analogous case involving a criminal action recognizes that a jurisdictional inquiry in this context is not the correct one. In *State ex rel. Engebritson v. Circuit Court for Grant and Day Counties*, 69 SD 454, 457, 11 NW2d 659, 660 (1943), a defendant contended that a defective pleading (a failure to plead an essential element of a crime) deprived the court of subject matter jurisdiction.[5] In rejecting that contention, this Court recognized:

> The inquiry in such case is not whether the complaint contains such specific allegations as would make it good on demurrer or motion in arrest, but whether it describes a class of offenses of which the court has jurisdiction and alleges the respondent to be guilty.

*Id.* at 459, 11 NW2d at 661 (quoting *Ex Parte* Turner, 102 A 943, 946 (Vt 1918) (citing *In re* Coy, 127 US 731, 8 SCt 1263, 32 LEd 274 (1888)).

[¶16.] We recognize this distinction between pleading deficiencies and the subject matter jurisdiction of the circuit court in cases of contempt. We will now

---

5.     The defendant argued:
> [I]n substance . . . that the circuit court of Grant County was without authority to render judgment under this information purporting to charge petitioner with the crime. In support of his position, petitioner contend[ed] that the information fail[ed] to state a public offense in that an essential element of the crime of perjury [was] the materiality of the false testimony and it [was] contended the information show[ed] that the false testimony was not material to the question at issue in the trial where the false testimony was given.

*Engebritson*, 69 SD at 457, 11 NW2d at 660.

discontinue use of the "jurisdictional" language of *Thomerson* and its underlying authorities. Instead, we will only require that an affidavit or complaint simply relate sufficient facts to show that the nature of the case and the relief sought are matters involving indirect civil contempt. Of course, upon proper motion, a defectively pleaded affidavit is subject to dismissal for failure to state a claim. However, we will now cease to recognize technical pleading defects as generally jurisdictional in the sense that they deprive the circuit court of the power to consider the case.

[¶17.]    Recognition of the distinction is significant in this case because Sazama appeared and tried the case on the merits without objecting to the sufficiency of the affidavit. Because Sazama acknowledges that his general appearance and failure to challenge the affidavit waives non-jurisdictional issues on appeal, he contends his pleading argument is jurisdictional. In so asserting, Sazama attempts to challenge an otherwise factually sufficient affidavit through an avenue of attack that is always available since a circuit court's subject matter jurisdiction may be considered at any time. *See supra* ¶9 (citing *Wold Family Farms, Inc.*, 2003 SD 45, ¶12, 661 NW2d at 723). However, as this opinion elucidates, technical defects in pleading all facts material to the alleged violation do not deprive the circuit court of subject matter jurisdiction to hear the case. In this case, the affidavit unquestionably established that the nature of the case and relief sought involved civil contempt, a class or category of cases over which the circuit court had the power to act. Therefore, Sazama's pleading issues do not involve the circuit court's subject matter jurisdiction. Because Sazama appeared generally and

participated in the trial on the merits without objecting to the pleadings, he is now precluded from appealing non-jurisdictional pleading defects not raised below. *See Taber*, 13 SD at 71, 82 NW at 401 (noting that because an appellant made a general appearance in a contempt proceeding, he was not in position to assert that the court was without jurisdiction on appeal).

[¶18.] For all of the foregoing reasons, we now change our view of jurisdiction and technical pleading defects. We hereby limit the jurisdictional language in *Wold Family Farms, Inc.*, 2003 SD 45, ¶20, 661 NW2d at 725; *Thomerson*, 387 NW2d at 513; *Simmons*, 66 SD at 80, 278 NW at 539; *Solberg*, 51 SD at 248, 213 NW at 10; *Freeman*, 8 SD at 439, 66 NW2d at 929; and *Sweetland*, 3 SD at 506-07, 54 NW at 416. Therefore, we decline to consider issue one alleging an insufficiency in the factual allegations of this affidavit.

[¶19.] **2. Whether the circuit court erred when it found Sazama had knowledge of an order, the ability to comply with the order, and that he had willfully or contumaciously disobeyed the order.**

[¶20.] The duty to provide for one's children is a parent's first duty. Taecker v. Taecker, 527 NW2d 295, 298 (SD 1995) (citing Donohue v. Getman, 432 NW2d 281 (SD 1988)); s*ee also* SDCL 25-7-6.1. When a defendant advances the defense of inability to pay under the terms of a child support order, the burden of proof is on the defendant to establish the inability to fully comply and that any compliance was to the fullest extent possible. *Id*. (citing Talbert v. Talbert*,* 290 NW2d 862, 863 (SD 1980); Bailey v. Bailey*,* 77 SD 546, 95 NW2d 533, 535 (SD 1959)). "Self serving testimony alone is insufficient and corroboration is necessary to establish a defense that a party cannot pay [child support]." *Thomerson*, 387 NW2d at 513 (citing

Rosseau v. Gesinger, 330 NW2d 522, 524 (SD 1983) (noting the corroboration principle in a case where the defendant's claim that the existence of factors, precluding his ability to pay alimony as ordered, were unsupported by any evidence)).

[¶21.]     The circuit court found Sazama's unemployment and alcoholism were voluntary conditions for which he had not sought treatment and assistance. The court also found that the denial of Social Security disability income was indicative of Sazama's ability to work despite his claims to the contrary. Therefore, it concluded that Sazama's inability to pay was voluntarily induced and found him to be in contempt of the 1997 child support order. The circuit court did not err when it concluded that Sazama was in willful and contumacious disobedience of the order.

[¶22.]     **3.     Whether the circuit court's order setting the penalty for continued disobedience violated Sazama's due process rights when the penalty imposed did not provide a method for Sazama to purge himself of the contempt.**

[¶23.]     Contempt can be classified as either criminal or civil in nature. *Wold Family Farms, Inc.*, 2003 SD 45, ¶14, 661 NW2d at 723 (quoting *Thomerson*, 387 NW2d at 512). The purpose of the civil contempt proceeding is to force a party "to comply with orders and decrees issued by a court in a civil action for the benefit of an opposing party." *Id.* (citation omitted). The nature of the sanction in a civil contempt proceeding is intended to be coercive in nature, as it seeks to compel "the person to act in accordance with the court's order[,]" rather than to punish for past conduct. *Id.* (citation omitted).

[¶24.]    In contrast, "[c]riminal contempt is a crime in an ordinary sense." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 US 821, 826, 114 SCt 2552, 2556, 129 LEd2d 642 (1994) (quoting *Bloom v. Illinois*, 391 US 194, 201, 88 SCt 1477, 1481, 20 LEd2d 522 (1968)). Criminal contempt arises from spoken words or acts committed in the presence of the court during a proceeding, or when the court is in recess or adjourned that serve to "subvert, embarrass, or prevent the administration of justice." *Wold Family Farms, Inc.*, 2003 SD 45, ¶14, 661 NW2d at 723 (quoting *Thomerson*, 387 NW2d at 512). In a criminal contempt proceeding, the court imposes sanctions that serve to punish the contemnor for a past transgression against the authority or dignity of the court. *Id.* (citation omitted). Such criminal sanctions trigger constitutional protections, including the right to a jury trial when fixed, retrospective imprisonment is imposed, implicating liberty interests, or non-compensatory fines are imposed that the contemnor is unable to purge. *Int'l Union, United Mine Workers of America*, 512 US at 829, 114 SCt at 2558, 129 LEd2d 642 (citations omitted).

[¶25.]    Despite the obvious distinction in purpose, a civil contempt proceeding can result in incarceration when the contemnor refuses to comply with an order or decree of the circuit court, entered for the benefit of the opposing party. *Wold Family Farms, Inc.*, 2003 SD 45, ¶14, 661 NW2d at 723 (quoting *Thomerson*, 387 NW2d at 512); *see also Int'l Union, United Mine Workers of America*, 512 US at 829, 114 SCt at 2558, 129 LEd2d 642. However, for the incarceration to be coercive and the contempt proceeding to maintain a civil character, the incarceration cannot be for a definite period and can only be imposed on the contemnor until such time as

he complies with the order or he demonstrates that compliance is impossible. *Wold Family Farms, Inc.*, 2003 SD 45, ¶16, 661 NW2d at 724 (citing *Thomerson*, 387 NW2d at 514; Karras v. Gannon, 345 NW2d 856 (SD 1984)); s*ee also Int'l Union, United Mine Workers of America*, 512 US at 828, 114 SCt at 2558, 129 LEd2d 642 (citations omitted).

[¶26.]     Determining when the sanctions imposed in a contempt proceeding trigger the constitutional safeguards applicable in criminal proceedings can be a difficult task. *Int'l Union, United Mine Workers of Am.*, 512 US at 827, 114 SCt at 2557, 129 LEd2d 642. This is because civil and criminal sanctions may bear a superficial resemblance. *Id.* The analysis must extend beyond the intended or stated purpose of the court in imposing the sanctions and must include an examination of the character of the sanctions and the relief from the sanctions that is available to the contemnor. *Id.* at 828, 114 SCt at 2557, 129 LEd2d 642 (citations omitted).

[¶27.]     A sanction will be civil and remedial in nature if it "coerces the defendant into compliance with the court's order, or compensates the complainant for losses sustained." *Id.* at 829, 114 SCt at 2558, 129 LEd2d 642 (citing United States v. Mine Workers, 330 US 258, 303-04, 67 SCt 677, 701, 91 LEd2d 884 (1947)). Thus, the contemnor is said to " 'carr[y] the keys of his prison in his own pocket.' " *Id.* at 828, 114 SCt at 2558, 129 LEd2d 642 (quoting Gompers v. Bucks Stove & Range Co., 221 US 418, 442, 31 SCt 492, 498, 55 LEd 797 (1911) (quoting *In re* Nevitt, 117 F 448, 451 (8thCir 1902))). However, "a fixed sentence of imprisonment is punitive and *criminal* in nature if it is imposed retrospectively for

a 'completed act of disobedience.' " *Id.* at 828, 114 SCt at 2558, 129 LEd2d 642. (quoting *Gompers*, 221 US at 443, 31 SCt at 498, 55 LEd 797) (emphasis added). In such instances, the contemnor is unable to avoid or shorten the confinement through later compliance, that is, the contemnor has no ability to purge the contempt. *Id.* Because the punishment is retrospective, it cannot have a forward looking coercive effect and is thus a criminal sanction for which constitutional safeguards must be followed. *See id.*

[¶28.]    In the instant case, the order was imposed in a civil contempt proceeding. However, the court ordered that upon failing to pay child support in any given month, Sazama was required to serve the first ten days of the following month in the county jail. Sazama could not purge himself and be released even if he paid the prior month's support shortly before or while he was incarcerated for the previous month's violation. Therefore once imposed, the ten-day jail sentence has no coercive effect and cannot motivate Sazama to pay the previous month's child support obligation. In addition, the ten-day jail sentence does not compensate Muilenberg for the monthly child support obligation. Consequently, the sanction imposed upon Sazama is criminal in nature rather than civil or coercive, and invokes the procedural safeguards relevant to criminal sanctions, including the right to trial.

[¶29.]    Accordingly, we reverse the order of the circuit court and remand for the imposition of a civil sanction that is coercive in nature and from which Sazama may purge himself prior to its imposition. In the alternative, if the circuit court seeks to impose the same or a similar non-coercive sanction, we order the court to

do so in compliance with the procedural due process requirements of a criminal trial.

[¶30.] Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

[¶31.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.